# MARTIN *v.* OHIO

No. 85–6461.   Argued December 2, 1986—Decided February 25, 1987

WHITE, J., delivered the opinion of the Court, in which REHNQUIST, C. J., and STEVENS, O'CONNOR, and SCALIA, JJ., joined. POWELL, J., filed a dissenting opinion, in which BRENNAN and MARSHALL, JJ., joined, and in Parts I and III of which BLACKMUN, J., joined, *post*, p. 236.

*James R. Willis* argued the cause for petitioner. With him on the briefs was *Margery B. Koosed.*

*George J. Sadd* argued the cause for respondent. With him on the brief was *John T. Corrigan.**

---

*\*Randall M. Dana, Gregory L. Ayers, Richard L. Aynes, Margery B. Koosed,* and *J. Dean Carro* filed a brief for the Ohio Public Defender Commission as *amicus curiae* urging reversal.

JUSTICE WHITE delivered the opinion of the Court.

The Ohio Code provides that "[e]very person accused of an offense is presumed innocent until proven guilty beyond a reasonable doubt, and the burden of proof for all elements of the offense is upon the prosecution. The burden of going forward with the evidence of an affirmative defense, and the burden of proof by a preponderance of the evidence, for an affirmative defense, is upon the accused." Ohio Rev. Code Ann. § 2901.05(A)(1982). An affirmative defense is one involving "an excuse or justification peculiarly within the knowledge of the accused, on which he can fairly be required to adduce supporting evidence." Ohio Rev. Code Ann. § 2901.05(C)(2)(1982). The Ohio courts have "long determined that self-defense is an affirmative defense," 21 Ohio St. 3d 91, 93, 488 N. E. 2d 166, 168 (1986), and that the defendant has the burden of proving it as required by § 2901.05(A).

As defined by the trial court in its instructions in this case, the elements of self-defense that the defendant must prove are that (1) the defendant was not at fault in creating the situation giving rise to the argument; (2) the defendant had an honest belief that she was in imminent danger of death or great bodily harm, and that her only means of escape from such danger was in the use of such force; and (3) the defendant did not violate any duty to retreat or avoid danger. App. 19. The question before us is whether the Due Process Clause of the Fourteenth Amendment forbids placing the burden of proving self-defense on the defendant when she is charged by the State of Ohio with committing the crime of aggravated murder, which, as relevant to this case, is defined by the Revised Code of Ohio as "purposely, and with prior calculation and design, caus[ing] the death of another." Ohio Rev. Code Ann. § 2903.01 (1982).

The facts of the case, taken from the opinions of the courts below, may be succinctly stated. On July 21, 1983, petitioner Earline Martin and her husband, Walter Martin,

argued over grocery money. Petitioner claimed that her husband struck her in the head during the argument. Petitioner's version of what then transpired was that she went upstairs, put on a robe, and later came back down with her husband's gun which she intended to dispose of. Her husband saw something in her hand and questioned her about it. He came at her, and she lost her head and fired the gun at him. Five or six shots were fired, three of them striking and killing Mr. Martin. She was charged with and tried for aggravated murder. She pleaded self-defense and testified in her own defense. The judge charged the jury with respect to the elements of the crime and of self-defense and rejected petitioner's Due Process Clause challenge to the charge placing on her the burden of proving self-defense. The jury found her guilty.

Both the Ohio Court of Appeals and the Supreme Court of Ohio affirmed the conviction. Both rejected the constitutional challenge to the instruction requiring petitioner to prove self-defense. The latter court, relying upon our opinion in *Patterson* v. *New York*, 432 U. S. 197 (1977), concluded that the State was required to prove the three elements of aggravated murder but that *Patterson* did not require it to disprove self-defense, which is a separate issue that did not require Mrs. Martin to disprove any element of the offense with which she was charged. The court said, "the state proved beyond a reasonable doubt that appellant purposely, and with prior calculation and design, caused the death of her husband. Appellant did not dispute the existence of these elements, but rather sought to justify her actions on grounds she acted in self defense." 21 Ohio St. 3d, at 94, 488 N. E. 2d, at 168. There was thus no infirmity in her conviction. We granted certiorari, 475 U. S. 1119 (1986), and affirm the decision of the Supreme Court of Ohio.

*In re Winship*, 397 U. S. 358, 364 (1970), declared that the Due Process Clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact

necessary to constitute the crime with which he is charged."
A few years later, we held that *Winship*'s mandate was fully
satisfied where the State of New York had proved beyond
reasonable doubt each of the elements of murder, but placed
on the defendant the burden of proving the affirmative de-
fense of extreme emotional disturbance, which, if proved,
would have reduced the crime from murder to manslaughter.
*Patterson* v. *New York, supra.* We there emphasized the
preeminent role of the States in preventing and dealing with
crime and the reluctance of the Court to disturb a State's de-
cision with respect to the definition of criminal conduct and
the procedures by which the criminal laws are to be enforced
in the courts, including the burden of producing evidence and
allocating the burden of persuasion. 432 U. S., at 201–202.
New York had the authority to define murder as the inten-
tional killing of another person. It had chosen, however, to
reduce the crime to manslaughter if the defendant proved by
a preponderance of the evidence that he had acted under the
influence of extreme emotional distress. To convict of mur-
der, the jury was required to find beyond a reasonable doubt,
based on all the evidence, including that related to the de-
fendant's mental state at the time of the crime, each of the
elements of murder and also to conclude that the defendant
had not proved his affirmative defense. The jury convicted
Patterson, and we held there was no violation of the Four-
teenth Amendment as construed in *Winship.* Referring to
*Leland* v. *Oregon,* 343 U. S. 790 (1952), and *Rivera* v. *Dela-
ware,* 429 U. S. 877 (1976), we added that New York "did no
more than *Leland* and *Rivera* permitted it to do without vi-
olating the Due Process Clause" and declined to reconsider
those cases. 432 U. S., at 206, 207. It was also observed
that "the fact that a majority of the States have now assumed
the burden of disproving affirmative defenses—for whatever
reasons—[does not] mean that those States that strike a dif-
ferent balance are in violation of the Constitution." *Id.,*
at 211.

As in *Patterson*, the jury was here instructed that to convict it must find, in light of all the evidence, that each of the elements of the crime of aggravated murder has been proved by the State beyond reasonable doubt, and that the burden of proof with respect to these elements did not shift. To find guilt, the jury had to be convinced that none of the evidence, whether offered by the State or by Martin in connection with her plea of self-defense, raised a reasonable doubt that Martin had killed her husband, that she had the specific purpose and intent to cause his death, or that she had done so with prior calculation and design. It was also told, however, that it could acquit if it found by a preponderance of the evidence that Martin had not precipitated the confrontation, that she had an honest belief that she was in imminent danger of death or great bodily harm, and that she had satisfied any duty to retreat or avoid danger. The jury convicted Martin.

We agree with the State and its Supreme Court that this conviction did not violate the Due Process Clause. The State did not exceed its authority in defining the crime of murder as purposely causing the death of another with prior calculation or design. It did not seek to shift to Martin the burden of proving any of those elements, and the jury's verdict reflects that none of her self-defense evidence raised a reasonable doubt about the State's proof that she purposefully killed with prior calculation and design. She nevertheless had the opportunity under state law and the instructions given to justify the killing and show herself to be blameless by proving that she acted in self-defense. The jury thought she had failed to do so, and Ohio is as entitled to punish Martin as one guilty of murder as New York was to punish Patterson.

It would be quite different if the jury had been instructed that self-defense evidence could not be considered in determining whether there was a reasonable doubt about the State's case, *i. e.*, that self-defense evidence must be put aside for all purposes unless it satisfied the preponderance

standard. Such an instruction would relieve the State of its burden and plainly run afoul of *Winship*'s mandate. 397 U. S., at 364. The instructions in this case could be clearer in this respect, but when read as a whole, we think they are adequate to convey to the jury that all of the evidence, including the evidence going to self-defense, must be considered in deciding whether there was a reasonable doubt about the sufficiency of the State's proof of the elements of the crime.

We are thus not moved by assertions that the elements of aggravated murder and self-defense overlap in the sense that evidence to prove the latter will often tend to negate the former. It may be that most encounters in which self-defense is claimed arise suddenly and involve no prior plan or specific purpose to take life. In those cases, evidence offered to support the defense may negate a purposeful killing by prior calculation and design, but Ohio does not shift to the defendant the burden of disproving any element of the state's case. When the prosecution has made out a prima facie case and survives a motion to acquit, the jury may nevertheless not convict if the evidence offered by the defendant raises any reasonable doubt about the existence of any fact necessary for the finding of guilt. Evidence creating a reasonable doubt could easily fall far short of proving self-defense by a preponderance of the evidence. Of course, if such doubt is not raised in the jury's mind and each juror is convinced that the defendant purposely and with prior calculation and design took life, the killing will still be excused if the elements of the defense are satisfactorily established. We note here, but need not rely on, the observation of the Supreme Court of Ohio that "[a]ppellant did not dispute the existence of [the elements of aggravated murder], but rather sought to justify her actions on grounds she acted in self-defense." 21 Ohio St. 3d, at 94, 488 N. E. 2d, at 168.*

_____

*The dissent believes that the self-defense instruction might have led the jury to believe that the defendant had the burden of proving the ab-

Petitioner submits that there can be no conviction under Ohio law unless the defendant's conduct is unlawful, and that because self-defense renders lawful what would otherwise be a crime, unlawfulness is an element of the offense that the state must prove by disproving self-defense. This argument founders on state law, for it has been rejected by the Ohio Supreme Court and by the Court of Appeals for the Sixth Circuit. *White* v. *Arn*, 788 F. 2d 338, 346–347 (1986); *State* v. *Morris*, 8 Ohio App. 3d 12, 18–19, 455 N. E. 2d 1352, 1359–1360 (1982). It is true that unlawfulness is essential for conviction, but the Ohio courts hold that the unlawfulness in cases like this is the conduct satisfying the elements of aggravated murder—an interpretation of state law that we are not in a position to dispute. The same is true of the claim that it is necessary to prove a "criminal" intent to convict for serious crimes, which cannot occur if self-defense is shown: the necessary mental state for aggravated murder under Ohio law is the specific purpose to take life pursuant to prior calculation and design. See *White* v. *Arn, supra,* at 346.

As we noted in *Patterson*, the common-law rule was that affirmative defenses, including self-defense, were matters for the defendant to prove. "This was the rule when the Fifth Amendment was adopted, and it was the American rule when the Fourteenth Amendment was ratified." 432 U. S., at 202. Indeed, well into this century, a number of States followed the common-law rule and required a defendant to shoulder the burden of proving that he acted in self-defense. Fletcher, Two Kinds of Legal Rules: A Comparative Study of Burden-of-Persuasion Practices in Criminal Cases, 77 Yale

---

sence of prior calculation and design. Indeed, its position is that *no* instruction could be clear enough not to mislead the jury. As is evident from the text, we disagree. We do not harbor the dissent's mistrust of the jury; and the instructions were sufficiently clear to convey to the jury that the State's burden of proving prior calculation did not shift and that self-defense evidence had to be considered in determining whether the State's burden had been discharged. We do not depart from *Patterson* v. *New York*, 432 U. S. 197 (1977), in this respect, or in any other.

L. J. 880, 882, and n. 10 (1968). We are aware that all but two of the States, Ohio and South Carolina, have abandoned the common-law rule and require the prosecution to prove the absence of self-defense when it is properly raised by the defendant. But the question remains whether those States are in violation of the Constitution; and, as we observed in *Patterson,* that question is not answered by cataloging the practices of other States. We are no more convinced that the Ohio practice of requiring self-defense to be proved by the defendant is unconstitutional than we are that the Constitution requires the prosecution to prove the sanity of a defendant who pleads not guilty by reason of insanity. We have had the opportunity to depart from *Leland* v. *Oregon,* 343 U. S. 790 (1952), but have refused to do so. *Rivera* v. *Delaware,* 429 U. S. 877 (1976). These cases were important to the *Patterson* decision and they, along with *Patterson,* are authority for our decision today.

The judgment of the Ohio Supreme Court is accordingly

*Affirmed.*

JUSTICE POWELL, with whom JUSTICE BRENNAN and JUSTICE MARSHALL join, and with whom JUSTICE BLACKMUN joins with respect to Parts I and III, dissenting.

Today the Court holds that a defendant can be convicted of aggravated murder even though the jury may have a reasonable doubt whether the accused acted in self-defense, and thus whether he is guilty of a crime. Because I think this decision is inconsistent with both precedent and fundamental fairness, I dissent.

I

Petitioner Earline Martin was tried in state court for the aggravated murder of her husband. Under Ohio law, the elements of the crime are that the defendant has purposely killed another with "prior calculation and design." Ohio Rev. Code Ann. § 2903.01 (1982). Martin admitted that she

shot her husband, but claimed that she acted in self-defense. Because self-defense is classified as an "affirmative" defense in Ohio, the jury was instructed that Martin had the burden of proving her claim by a preponderance of the evidence. Martin apparently failed to carry this burden, and the jury found her guilty.

The Ohio Supreme Court upheld the conviction, relying in part on this Court's opinion in *Patterson* v. *New York*, 432 U. S. 197 (1977). The Court today also relies on the *Patterson* reasoning in affirming the Ohio decision. If one accepts *Patterson* as the proper method of analysis for this case, I believe that the Court's opinion ignores its central meaning.

In *Patterson*, the Court upheld a state statute that shifted the burden of proof for an affirmative defense to the accused. New York law required the prosecutor to prove all of the statutorily defined elements of murder beyond a reasonable doubt, but permitted a defendant to reduce the charge to manslaughter by showing that he acted while suffering an "extreme emotional disturbance." See N. Y. Penal Law §§ 125.25, 125.20 (McKinney 1975 and Supp. 1987). The Court found that this burden shifting did not violate due process, largely because the affirmative defense did "not serve to negative any facts of the crime which the State is to prove in order to convict of murder." 432 U. S., at 207. The clear implication of this ruling is that when an affirmative defense *does* negate an element of the crime, the state may not shift the burden. See *White* v. *Arn*, 788 F. 2d 338, 344–345 (CA6 1986). In such a case, *In re Winship*, 397 U. S. 358 (1970), requires the state to prove the nonexistence of the defense beyond a reasonable doubt.

The reason for treating a defense that negates an element of the crime differently from other affirmative defenses is plain. If the jury is told that the prosecution has the burden of proving all the elements of a crime, but then also is in-

structed that the defendant has the burden of *dis*proving one of those same elements, there is a danger that the jurors will resolve the inconsistency in a way that lessens the presumption of innocence. For example, the jury might reasonably believe that by raising the defense, the accused has assumed the ultimate burden of proving that particular element. Or, it might reconcile the instructions simply by balancing the evidence that supports the prosecutor's case against the evidence supporting the affirmative defense, and conclude that the state has satisfied its burden if the prosecution's version is more persuasive. In either case, the jury is given the unmistakable but erroneous impression that the defendant shares the risk of nonpersuasion as to a fact necessary for conviction.[1]

Given these principles, the Court's reliance on *Patterson* is puzzling. Under Ohio law, the element of "prior calculation and design" is satisfied only when the accused has engaged in a "definite process of reasoning *in advance* of the killing," *i. e.*, when he has given the plan at least some "studied consideration." App. 14 (jury instructions) (emphasis added). In contrast, when a defendant such as Martin raises a claim of

---

[1] Indeed, this type of instruction has an inherently illogical aspect. It makes no sense to say that the prosecution has the burden of proving an element beyond a reasonable doubt, *and* that the defense has the burden of proving the contrary by a preponderance of the evidence. If the jury finds that the prosecutor has *not* met his burden, it of course will have no occasion to consider the affirmative defense. And if the jury finds that each element of the crime *has* been proved beyond a reasonable doubt, it necessarily has decided that the defendant has not disproved an element of the crime. In either situation the instructions on the affirmative defense are surplusage. Because a reasonable jury will attempt to ascribe some significance to the court's instructions, the likelihood that it will impermissibly shift the burden is increased.

Of course, whether the jury will in fact improperly shift the burden away from the state is uncertain. But it is "settled law . . . that when there exists a reasonable possibility that the jury relied on an unconstitutional understanding of the law in reaching a guilty verdict, that verdict must be set aside." *Francis* v. *Franklin*, 471 U. S. 307, 323, n. 8 (1985).

self-defense, the jury also is instructed that the accused must prove that she "had an honest belief that she was in *imminent* danger of death or great bodily harm."[2] *Id.*, at 19 (emphasis added). In many cases, a defendant who finds himself in immediate danger and reacts with deadly force will not have formed a prior intent to kill. The Court recognizes this when it states:

> "It may be that most encounters in which self-defense is claimed arise suddenly and involve no prior plan or specific purpose to take life. In those cases, evidence offered to support the defense may negate a purposeful killing by prior calculation and design . . . ." *Ante*, at 234.

Under *Patterson*, this conclusion should suggest that Ohio is precluded from shifting the burden as to self-defense. The Court nevertheless concludes that Martin was properly required to prove self-defense, simply because "Ohio does not shift to the defendant the burden of disproving any element of the state's case." *Ibid.*

The Court gives no explanation for this apparent rejection of *Patterson*. The only justification advanced for the Court's decision is that the jury could have used the evidence of self-defense to find that the State failed to carry its burden of proof. Because the jurors were free to consider both Martin's and the State's evidence, the argument goes, the verdict of guilt necessarily means that they were convinced that the defendant acted with prior calculation and design, and were unpersuaded that she acted in self-defense. *Ante*, at 233. The Court thus seems to conclude that as long as the jury is told that the state has the burden of proving all elements of the crime, the overlap between the offense and defense is immaterial.

---

[2] The accused also must have avoided the danger if possible, and must not have been at fault in creating the threatening situation. See *State* v. *Robbins*, 58 Ohio St. 2d 74, 79–80, 388 N. E. 2d 755, 758 (1979).

This reasoning is flawed in two respects. First, it simply ignores the problem that arises from inconsistent jury instructions in a criminal case. The Court's holding implicitly assumes that the jury in fact understands that the ultimate burden remains with the prosecutor at all times, despite a conflicting instruction that places the burden on the accused to disprove the same element. But as pointed out above, the *Patterson* distinction between defenses that negate an element of the crime and those that do not is based on the legitimate concern that the jury *will* mistakenly lower the state's burden. In short, the Court's rationale fails to explain why the overlap in this case does not create the risk that *Patterson* suggested was unacceptable.[3]

Second, the Court significantly, and without explanation, extends the deference granted to state legislatures in this area. Today's decision could be read to say that virtually all state attempts to shift the burden of proof for affirmative defenses will be upheld, regardless of the relationship between the elements of the defense and the elements of the crime. As I understand it, *Patterson* allowed burden shifting because evidence of an extreme emotional disturbance did not negate the *mens rea* of the underlying offense. After today's decision, however, even if proof of the defense *does* negate an element of the offense, burden shifting still may be

---

[3] This risk could have been reduced—although in my view, not eliminated—if the instructions had made it clear that evidence of self-defense can create a reasonable doubt as to guilt, *even if* that same evidence did not rise to the level necessary to prove an affirmative defense. But the instructions gave little guidance in this respect. The trial court simply told the jury that the prosecution must prove the elements of the crime, and the defendant must prove the existence of the defense. The instructions gave no indication how the jury should evaluate evidence that affected an element of *both* the crime and the defense. Cf. *Francis* v. *Franklin, supra,* at 322 ("Nothing in these specific sentences or in the [jury] charge as a whole makes clear . . . that one of these contradictory instructions carries more weight than the other").

permitted because the jury can consider the defendant's evidence when reaching its verdict.

I agree, of course, that States must have substantial leeway in defining their criminal laws and administering their criminal justice systems. But none of our precedents suggests that courts must give complete deference to a State's judgment about whether a shift in the burden of proof is consistent with the presumption of innocence. In the past we have emphasized that in some circumstances it may be necessary to look beyond the text of the State's burden-shifting laws to satisfy ourselves that the requirements of *Winship* have been satisfied. In *Mullaney* v. *Wilbur*, 421 U. S. 684, 698–699 (1975) we explicitly noted the danger of granting the State unchecked discretion to shift the burden as to any element of proof in a criminal case.[4] The Court today fails to discuss or even cite *Mullaney*, despite our unanimous agreement in that case that this danger would justify judicial intervention in some cases. Even *Patterson*, from which I dissented, recognized that "there are obviously constitutional limits beyond which the States may not go [in labeling elements of a crime as an affirmative defense]."[5] 432 U. S., at 210. Today, however, the Court simply asserts that Ohio law properly allocates the burdens, without giving any indication of where those limits lie.

Because our precedent establishes that the burden of proof may not be shifted when the elements of the defense and the elements of the offense conflict, and because it seems clear

---

[4] We noted, for example:

"[I]f *Winship* were limited to those facts that constitute a crime as defined by state law, a State could undermine many of the interests that decision sought to protect without effecting any substantive change in its law. It would only be necessary to redefine the elements that constitute different crimes, characterizing them as factors that bear solely on the extent of punishment." 421 U. S., at 698.

[5] See also *McMillan* v. *Pennsylvania*, 477 U. S. 79, 86 (1986) ("[I]n certain limited circumstances *Winship*'s reasonable-doubt requirement applies to facts not formally identified as elements of the offense charged").

that they do so in this case, I would reverse the decision of the Ohio Supreme Court.

## II

Although I believe that this case is wrongly decided even under the principles set forth in *Patterson*, my differences with the Court's approach are more fundamental. I continue to believe that the better method for deciding when a State may shift the burden of proof is outlined in the Court's opinion in *Mullaney* and in my dissenting opinion in *Patterson*. In *Mullaney*, we emphasized that the state's obligation to prove certain facts beyond a reasonable doubt was not necessarily restricted to legislative distinctions between offenses and affirmative defenses. The boundaries of the state's authority in this respect were elaborated in the *Patterson* dissent, where I proposed a two-part inquiry:

> "The Due Process Clause requires that the prosecutor bear the burden of persuasion beyond a reasonable doubt only if the factor at issue makes a substantial difference in punishment and stigma. The requirement of course applies *a fortiori* if the factor makes the difference between guilt and innocence. . . . It also must be shown that in the Anglo-American legal tradition the factor in question historically has held that level of importance. If either branch of the test is not met, then the legislature retains its traditional authority over matters of proof." 432 U. S., at 226–227 (footnotes omitted).

Cf. *McMillan* v. *Pennsylvania*, 477 U. S. 79, 103 (1986) (STEVENS, J., dissenting) ("[I]f a State provides that a specific component of a prohibited transaction shall give rise both to a special stigma and to a special punishment, that component must be treated as a 'fact necessary to constitute the crime' within the meaning of our holding in *In re Winship*").

There are at least two benefits to this approach. First, it ensures that the critical facts necessary to sustain a conviction will be proved by the state. Because the Court would

be willing to look beyond the text of a state statute, legislatures would have no incentive to redefine essential elements of an offense to make them part of an affirmative defense, thereby shifting the burden of proof in a manner inconsistent with *Winship* and *Mullaney*. Second, it would leave the States free in all other respects to recognize new factors that may mitigate the degree of criminality or punishment, without requiring that they also bear the burden of disproving these defenses. See *Patterson* v. *New York*, 432 U. S., at 229–230 (POWELL, J., dissenting) ("New ameliorative affirmative defenses . . . generally remain undisturbed by the holdings in *Winship* and *Mullaney*" (footnote omitted)).

Under this analysis, it plainly is impermissible to require the accused to prove self-defense. If petitioner could have carried her burden, the result would have been decisively different as to both guilt and punishment. There also is no dispute that self-defense historically is one of the primary justifications for otherwise unlawful conduct. See, *e. g.*, *Beard* v. *United States*, 158 U. S. 550, 562 (1895). Thus, while I acknowledge that the two-part test may be difficult to apply at times, it is hard to imagine a more clear-cut application than the one presented here.

### III

In its willingness to defer to the State's legislative definitions of crimes and defenses, the Court apparently has failed to recognize the practical effect of its decision. Martin alleged that she was innocent because she acted in self-defense, a complete justification under Ohio law. See *State* v. *Nolton*, 19 Ohio St. 2d 133, 249 N. E. 2d 797 (1969). Because she had the burden of proof on this issue, the jury could have believed that it was just as likely as not that Martin's conduct was justified, and yet still have voted to convict. In other words, even though the jury may have had a substantial doubt whether Martin committed a crime, she was found guilty under Ohio law. I do not agree that the Court's au-

thority to review state legislative choices is so limited that it justifies increasing the risk of convicting a person who may not be blameworthy. See *Patterson* v. *New York, supra,* at 201–202 (state definition of criminal law must yield when it "'offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental'" (quoting *Speiser* v. *Randall,* 357 U. S. 513, 523 (1958))). The complexity of the inquiry as to when a State may shift the burden of proof should not lead the Court to fashion simple rules of deference that could lead to such unjust results.