**John T. MOSS, Appellant,**

v.

**A.L. LOCKHART, Director A.D.C., Appellee.**

No. 91–1553.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 15, 1991.

Decided April 17, 1992.

Mark Steven Cambiano, Morrilton, Ariz., argued, for appellant.

Jack Gillian, Little Rock, Ark., argued, for appellee.

Before McMILLIAN and JOHN R. GIBSON, Circuit Judges, and HUNTER,[*] Senior District Judge.

JOHN R. GIBSON, Circuit Judge.

John T. Moss appeals the denial of his petition for writ of habeas corpus brought under 28 U.S.C. § 2254 (1988). Moss is serving a life sentence following his state court conviction of capital murder for a killing that occurred during a robbery attempt at a motel. He argues that one of the instructions required him to assume the burden of proof with respect to an element of the offense. He also complains that there was insufficient evidence to convict him, and that his trial was unfair because of prosecutorial misconduct and because the trial court seated both a mother and her son as jurors at his trial. We affirm the district court's[1] denial of the writ.

Moss was convicted of felony murder in the killing of a motel employee during an attempted robbery with two accomplices, Smith and Bussard, at a motel near Hardy, Arkansas. About 1:00 a.m. the morning of the murder, three men arrived at the Motor Port Motel, where the attendant, Mr. Garner, let them in. The Garners lived in a bedroom that opened into the office. It was Garner's custom to carry a gun when he answered night calls. The three men entered in darkness. The attendant's wife, Mrs. Garner, was in bed. Mrs. Garner heard scuffling and the men pushed Mr. Garner into the bedroom. Then she heard Mr. Garner telling the men they could have "the money." She then heard "all kinds of" gunshots. The men left and Mrs. Garner made her way to a telephone to call for help. She eventually realized she had been shot twice. Mr. Garner was dead, with five gunshot wounds.

When police arrived they found a trail of blood outside the motel leading to the woods, indicating that the robbers had been wounded, too. Moss and Bussard both went to a hospital in Springfield, Missouri, the next day with bullets in their bodies that matched ballistically with a gun found underneath Garner's body. Moss gave police and a hospital employee two different and inconsistent accounts of how he came to be wounded.

At trial Moss testified that he went along with Bussard and Smith to collect a debt Garner owed Bussard, but that he did not "know what was going to happen when [they] got to that motel." Moss stated that the others pushed him into the motel, and that he first learned that anyone had a gun after he was in the motel, when he saw Smith with the gun. He testified that he had no part in the shooting.

Moss was convicted for Arthur Garner's killing under the capital murder statute,

---

[*] The HONORABLE ELMO B. HUNTER, Senior United States District Judge for the Western District of Missouri, sitting by designation.

1. The Honorable G. Thomas Eisele, Chief Judge, United States District Court for the Eastern District of Arkansas.

Ark.Code Ann. § 5–10–101(a)(1) (Michie 1987) (formerly Ark.Stat.Ann. § 41–1501(1)(a)), which provides:

(a) A person commits capital murder if:

(1) Acting alone or with one (1) or more other persons, he commits or attempts to commit ... robbery [or] burglary ... and in the course of and in furtherance of the felony, or in immediate flight therefrom, he or an accomplice causes the death of any person under circumstances manifesting extreme indifference to the value of human life....

The court instructed the jury on the murder charge:

John Thomas Moss is charged with the offense of Capital Murder of Arthur Garner. To sustain this charge, the State must prove the following things beyond a reasonable doubt.

First: That John Thomas Moss acting with one or more other persons committed or attempted to commit the crimes of robbery or burglary; and

Second: That in the course of and in furtherance of one or both felonies, John Thomas Moss or a person acting with him, caused the death of Arthur Garner under circumstances manifesting an extreme indifference to the value of human life.

. . . .

Now, as a part of the charge of Capital Murder, the State contends that the death of Arthur Garner occurred during the commission or attempted commission of the crimes of robbery or burglary by John Thomas Moss. To prove burglary, the State must prove beyond a reasonable doubt:

First: That John Thomas Moss or a person acting with him entered unlawfully in the office/home of Arthur Garner located in the Motor Port Motel; and

Second: That he did so with the purpose of committing therein a theft.

To prove robbery, the State must prove beyond a reasonable doubt:

That with the purpose of committing a theft, John Thomas Moss or a person acting with him employed or threatened to immediately employ physical force upon another.

If the crime of robbery or burglary is not proved to have been committed or attempted by John Thomas Moss or a person acting with him, he is not guilty of Capital Murder.

Moss submitted a defense under Ark. Code Ann. § 5–10–101(b) (Michie 1987) (formerly Ark.Stat.Ann. § 41–1501(2)), which provides as follows:

It is an affirmative defense to any prosecution under subsection (a)(1) of this section for an offense in which the defendant was not the only participant that the defendant did not commit the homicidal act or in any way solicit, command, induce, procure, counsel, or aid its commission.

Moss' affirmative defense instruction required the jury to find that Moss was not the only party to the offense, that he did not commit the homicidal act, and did not aid in its commission. Instruction 12 read as follows:

Now John Thomas Moss asserts an affirmative defense to the charge of capital murder. To establish this affirmative defense, John Thomas Moss must prove each of the following things:

First: That he was not the only party to the offense;

Second: That he did not commit the homicide act; and

Third: That he did not in any way solicit, command, induce, procure, counsel, or aid its commission.

John Thomas Moss has the burden of proving this defense by a preponderance of the evidence unless the defense is so proved by other evidence in the case.... If you find that this defense has been established then you shall find John Thomas Moss not guilty of the offense of capital murder. Whatever may be your finding as to this defense, you are reminded that the State still has the burden of establishing the guilt of John Thomas Moss upon the whole case beyond a reasonable doubt.

The court specifically instructed the jury concerning the burden of proof:

[T]he state must prove beyond a reasonable doubt each element of the offense charged. On the other hand, the defen-

dant is not required to prove his inno-cence.

. . . .

[T]here is a presumption of the defen-dant's innocence in a criminal prosecu-tion. In this case the defendant is pre-sumed to be innocent. That presumption of innocence attends and protects him throughout the trial and should continue to prevail in your minds until you are convinced of his guilt beyond a reason-able doubt.

■ Moss argues that the instructions in his case denied him due process by improp-erly shifting the burden of proof to him, and he cites several cases that consider whether certain instructions improperly re-quire a defendant to *negate* an element of the offense. *Martin v. Ohio,* 480 U.S. 228, 107 S.Ct. 1098, 94 L.Ed.2d 267 (1987); *Pat-terson v. New York,* 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977); *Mullaney v. Wilbur,* 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975). However, Moss' argu-ment differs fundamentally from the argu-ments made in the cases he cites. In those cases, the criminal defendants argued that the instruction required them to *negate* an element the State should have had to prove. For instance, in *Martin,* a murder defendant argued that a self defense in-struction requiring her to prove she had an honest belief that she was in imminent danger when she killed had the effect of making her *negate* the element of "prior calculation or design." 480 U.S. at 235, 107 S.Ct. at 1103. Moss, on the other hand, does not argue that the instructions re-quired him to *negate* any element, but in-stead to *prove* the State's case. He argues in his brief:

> Requiring Moss to prove affirmatively that he "was not the only participant" and that he "did not commit the homicid-al act or in any way solicit, command, induce, procure, counsel or aid its com-mission," placed the burden on him to prove the existence of an accomplice, an element of the offense. (Further ... it forced him to place himself at the scene of the alleged homicide).

In other words, Moss does not argue that he was required to prove his innocence, but to prove his guilt. He does not attack the Arkansas statute's allocation of burdens between prosecution and defense, but sim-ply alleges that the instructions in his case were so badly worded that they included a paradox stating that Moss could not be acquitted unless he proved the very facts that would require the jury to convict him. Moss' argument boils down to a claim that the jury could have believed that they could not acquit Moss unless he proved he was present at the killing. We cannot accept this reading of the instructions, which is strained, at best.

First, the instructions said that the state bore the burden of proving Moss, with ac-complices, was involved in the robbery or burglary during which Garner was killed. This satisfies *Martin.* 480 U.S. at 234, 107 S.Ct. at 1102.

Second, the obvious meaning of the in-structions the court gave was that *if* the State proved Moss was present during the robbery, then Moss could gain acquittal by proving he neither killed nor instigated the killing. This is where Moss argues that the burden was shifted to him to prove his own guilt. No jury could have so misun-derstood the instructions as to conclude that if there was a reasonable doubt as to whether Moss was even at the motel that night, they still had to convict him because he had the burden of proving he was at the scene of the crime.

In fact, the instructions simply present Moss' theory of the case. In choosing how to present his own case, Moss came to a fork in the road at which he had to decide whether to argue that the State did not prove he was at the motel during the kill-ing or to argue that he was there but did not participate in the killing. He chose the latter route and he did so in the hope of persuading the jury to acquit him. Moss himself presented evidence that he was present at the scene of the crime with two accomplices. He cannot now complain that the instruction submitting his theory sug-gested he was at the scene of the crime; his own testimony showed that he was. There is no due process violation here.

■ Moss also argues that the evidence against him was not sufficient for a jury to have found him guilty beyond a reasonable doubt. He argues that if the trial court

had directed a verdict for him at the close of the State's case, as it ought to have, he would not have had to present evidence placing him at the scene of the crime, and that without his testimony, there was no sufficient evidence placing him at the scene of the crime. Applying the standard stated in *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979), we conclude that considering all the evidence in the light most favorable to the prosecution, a rational factfinder could have found Moss guilty beyond a reasonable doubt.

The most salient bit of evidence against Moss was that the bullets removed from Moss' leg and from Bussard, respectively, matched ballistically with the .22 revolver found underneath the body of the victim, Mr. Garner. A trace metal test showed that Mr. Garner had held metal shortly before his death, and the results were consistent with his having used a gun. Additionally, at the time he sought treatment for his wound, Moss was questioned by different people about his gunshot wound and gave two completely different stories. He also denied knowing Bussard, although they were well acquainted and he had been seen in Bussard's company the day of the murder.

These facts support the inference that Moss was at the scene of the crime without depending on Moss' admission during the presentation of his case.

■ Third, Moss argues that he is entitled to relief because of prosecutorial misconduct in asking about his possession of a gun in Arizona several years earlier. The trial judge admonished the jury to ignore the question. Moss argues that the prosecutor asked the question without a good faith basis and thus rendered the trial fundamentally unfair. The Arkansas Supreme Court rejected that argument on the grounds that Moss failed to preserve it in the trial court. *Moss v. State*, 280 Ark. 27, 655 S.W.2d 375, 376 (1983). Therefore, the argument is barred by procedural default. Moss also argues that a mistrial was granted in an Arkansas case so similar to his that failure to grant him a mistrial constituted an equal protection violation. Moss did not raise the equal protection argument

in the district court, and so we shall not address it further.

■ Finally, Moss argues that he was denied his right to an impartial jury by the trial court's refusal to strike for cause a venireman whose mother had already been empaneled as a juror. The Arkansas trial and appellate courts found that the juror manifested no bias. This finding of fact is entitled to a presumption of correctness under 28 U.S.C. § 2254(d). Moss has not overcome that presumption. Moss also argues that the relationship between these jurors constituted implied bias under Ark. Code Ann. § 16–33–304 (Michie 1987). The Arkansas Supreme Court implicitly rejected this argument in its discussion. *Moss*, 655 S.W.2d at 376.

We affirm the judgment of the district court denying the writ.