This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Carl Tanner, appellant, appeals from the judgments of the Wadsworth Municipal Court, finding him guilty of both assault, in violation of R.C. 2903.13(A), and willful or wanton operation of a motor vehicle, in violation of R.C. 4511.20. We affirm.
 I.
On March 21, 2001, a complaint was filed against Mr. Tanner alleging that, on March 18, 2001, Mr. Tanner committed assault against Glenn James, in violation of R.C. 2903.13(A). Additionally, on March 22, 2001, a complaint was issued against Mr. Tanner alleging that, on March 18, 2001, Mr. Tanner operated a vehicle in a willful or wanton manner, in violation of R.C. 4511.20. Mr. Tanner pled not guilty to both charges, and, on April 10, 2001, Mr. Tanner's cases were consolidated. On July 10, 2001, a trial was held. Mr. Tanner was found guilty of both charges. This appeal followed.
 II.
Mr. Tanner asserts three assignments of error for review. We will consider the first and third assignments of error together to facilitate review.
 A. First Assignment of Error "The trial court finding that Mr. Tanner's actions could be construed as operating a vehicle in willful or wanton disregard for the safety of persons was against the manifest weight of the evidence."
 Third Assignment of Error "The jury verdict that Mr. Tanner's action was not self-defense was against the manifest weight of the evidence."
First, we will consider Mr. Tanner's assertion that his convictions for assault and willful or wanton operation of a motor vehicle were against the manifest weight of the evidence. Next, as it also appears that he has raised a sufficiency argument, we will address the assertion that the evidence was insufficient to sustain his convictions.[1] Both assignments of error lack merit.
 Manifest Weight
When determining whether a conviction was against the manifest weight of the evidence,
 "an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten (1986), 33 Ohio App.3d 339, 340.
This discretionary power should be invoked only in extraordinary circumstances when the evidence presented weighs heavily in favor of the defendant. Id.
Mr. Tanner argues that he should have not been found guilty of assault because, as established by the manifest weight of the evidence, he was acting in self-defense. Additionally, Mr. Tanner argues that he should have not been found guilty on the charge of willful or wanton operation of a motor vehicle because it was Mr. James who grabbed hold of his car and that Mr. Tanner was merely driving away to protect himself. He further contends that, as Mr. James stated that he would have fallen to the ground from being hit by Mr. Tanner if he had not held onto the vehicle, Mr. James would have fallen to the ground regardless of the operation of Mr. Tanner's vehicle.
In the present case, Mr. James testified that, on March 18, 2001, he visited Deborah Chaney at her residence in the Village of Lodi, Summit County. Mr. James stated that he had dated Ms. Chaney a couple of years ago, but, currently, they were just friends. Mr. James explained that, while he was visiting, he went on a walk to the hardware store with Ms. Chaney, her son, and her dog. He testified that, as they were walking, Mr. Tanner drove past them a couple of times in his car. He then testified that, when he decided to stay outside the hardware store with the dog while Ms. Chaney did her shopping, Mr. Tanner drove by again and made an obscene gesture toward Mr. James. Mr. James stated that he responded by indicating to Mr. Tanner that he was willing to discuss the matter with him. When asked, Mr. James stated that he did not know Mr. Tanner personally and had only seen him in passing a couple of times. Mr. James testified that, several times in the past, Ms. Chaney had discussed with him her belief that Mr. Tanner was stalking and threatening her.
Mr. James stated that, as he, Ms. Chaney, and her son walked back to Ms. Chaney's house from the store, Mr. Tanner approached them in his car and pulled to a stop in front of them. Mr. James explained that Mr. Tanner seemed angry, yelling as he made his approach in the car. Mr. James stated that he walked toward the car, intending to tell Mr. Tanner to leave them alone. He also stated that, while he had his guard up, he was not in a furious state with regard to the situation.
Mr. James testified that, as he walked near the car, Mr. Tanner told him to neither touch nor reach into the car and that he responded by informing Mr. Tanner that he should leave. He stated that he never in any way threatened Mr. Tanner. He then testified that Mr. Tanner immediately hit him very hard in the nose. Mr. James explained that he was surprised and confused and that the next thing he knew, Mr. Tanner began to drive the car away with Mr. James holding onto the car by his fingertips only, trying to regain his balance. He stated that the car kept moving and that he fell to the ground while Mr. Tanner continued to drive away. Mr. James said that, other than being hit by Mr. Tanner, he never had any other physical contact with Mr. Tanner. He testified that he and Ms. Chaney went back to her house and immediately reported the incident to the police.
David Schaefer testified that he was working on his truck in his driveway on March 18, 2001 when he witnessed an incident between Mr. James and Mr. Tanner. He stated that he saw Mr. James, Ms. Chaney, and a child walking along the street with a dog when a car approached them. He further stated that the driver, Mr. Tanner, was shouting expletives as he drove the car. Mr. Schaefer testified that Mr. James walked toward the car in a normal manner and that Mr. Tanner responded by telling Mr. James to not touch or reach into the car. He explained that he could not hear anything that Mr. James said because Mr. Tanner was the only person shouting. He also explained that Mr. James stayed an arm's length away from the vehicle as he conversed with Mr. Tanner.
Mr. Schaefer testified that Mr. Tanner hit Mr. James and proceeded to drive away with Mr. James holding onto the car. He stated that it looked as if Mr. James had grabbed hold of the car to steady himself or to prevent himself from falling. He also explained that Mr. Tanner did not stop driving the car in spite of the fact that Mr. James was holding on and that, as the car began to pick up speed, Mr. James fell to the ground. Mr. Schaefer stated that it did not look as if Mr. James was trying to reach into the car while Mr. Tanner drove away because both of Mr. James' hands were holding onto the car as he was being dragged. When asked whether it was possible for Mr. Tanner to have been driving along the street that day to look at an apartment located on Mr. Schaefer's street, Mr. Schaefer stated that Mr. Tanner could not have been looking at an apartment near him because there were only four houses on his street, none of which has an apartment located in it, and, further, his neighbors on either side of him consisted of his girlfriend and an elderly lady.
Mr. Tanner testified that he was in Lodi on March 18, 2001 to have the tires on his car changed and to go to the laundromat. He testified that, after he had put his laundry in the washing machine, he realized that he was out of detergent so he drove downtown to the local store. Mr. Tanner stated that he was sitting in his car at a red light when a man, who he did not know, made an obscene gesture at him. When asked, Mr. Tanner stated that, because he did not know the man, he was not even certain the gesture was directed toward him, and, consequently, he did not do anything in response.
Mr. Tanner stated that, despite the fact that his laundry was still at the laundromat, he decided to refuel his car and look for an apartment that he was interested in renting. He stated that he turned his car onto the street where Ms. Chaney lived but turned again before he got to her house to find the apartment. Mr. Tanner explained that he was not paying attention to anyone walking on the sidewalk along the street because he was focused on finding the apartment but that, suddenly, Mr. James was walking in the road towards his car before Mr. Tanner could come to a complete stop. He stated that he came to a complete stop when Mr. James called out his name and motioned for him to stop. On cross-examination, Mr. Tanner stated that Ms. Chaney also waved for him to stop and told him that she wanted to talk to him. Later, he stated that, as he was driving down the street, he heard Ms. Chaney talking to Mr. James, referring to her belief that Mr. Tanner was stalking her.
Mr. Tanner testified that he told Mr. James not to touch either him or his car but that Mr. James leaned over Mr. Tanner's car, put his hand on Mr. Tanner's arm and told him to stay away from Ms. Chaney or Mr. James would inflict bodily injury upon Mr. Tanner. Mr. Tanner denied that he ever talked in a loud voice and stated that he had never directed profanity toward anyone while he was in his car. Mr. Tanner explained that he feared for his life so he pushed Mr. James' hand away and hit Mr. James in the face. He testified that, after hitting Mr. James, he made sure that Mr. James was far enough away from the car to permit Mr. Tanner to drive away. He testified that, the next thing he knew, Mr. James had grabbed hold of the car and was trying to reach his hands around Mr. Tanner's neck. Mr. Tanner stated that Mr. James even managed to grab hold of his jacket. Mr. Tanner testified that, once he realized that Mr. James had grabbed onto his car, he stopped the car and tried to pry his hands away from the vehicle. He stated that, once Mr. James' hands were away from the vehicle, he began to drive again and drove straight to the police department.
Sergeant Wesley Horning of the Lodi Police Department, testified that Mr. Tanner's story as to the March 18th events had changed since he first reported the incident to the police. He testified that, at first, Mr. Tanner had told him that, after Mr. James had made an obscene gesture toward Mr. Tanner, Mr. Tanner had turned his car around so that he could find Mr. James and determine what Mr. James' problem was with him. He stated that Mr. Tanner did not mention that he was looking for an apartment to rent. He also stated that, originally, Mr. Tanner seemed angry, not frightened, and that he told Sergeant Horning that Mr. James had tried to pull him from his car in an alley behind a pizza parlor.
First, in order to find Mr. Tanner guilty on the charge of assault, in violation of R.C. 2903.13(A), the prosecution was required to prove beyond a reasonable doubt that Mr. Tanner: 1) knowingly, 2) caused or attempted to cause physical harm to another. R.C. 2901.22(B) defines the culpable mental state of knowingly and states, in pertinent part, that "[a] person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature."
Further, pursuant to R.C. 2901.05(C), self-defense is an affirmative defense which must be proven by a preponderance of the evidence. Statev. Martin (1986), 21 Ohio St.3d 91, syllabus, affirmed, Martin v. Ohio
(1987), 480 U.S. 228, 94 L.Ed.2d 267. To establish self-defense for the use of less than deadly force in defense of one's person, the defendant must prove: (1) he was not at fault in creating the situation which gave rise to the event in which the use of non-deadly force occurred; (2) he had honest and reasonable grounds to believe that such conduct was necessary to defend himself against the imminent use of unlawful force; and (3) the force used was not likely to cause death or great bodily harm. State v. Wetherall (Mar. 22, 2002), 1st Dist. No. C-000113; see, also, State v. Woodall (May 29, 1996), 9th Dist. No. 17551; see, also,Akron v. Dokes (1986), 31 Ohio App.3d 24, 25.
The evidence in this case overwhelmingly indicates that Mr. Tanner approached Mr. James and Ms. Chaney in his car, while shouting in an angry and aggressive manner. Moreover, Mr. Tanner intentionally hit Mr. James in the face, despite the fact that Mr. James had neither acted aggressively toward Mr. Tanner nor had any other physical contact with Mr. Tanner. Although Mr. Tanner presented conflicting testimony, we refuse to overturn the verdict because the trier of fact believed Mr. James, whose testimony was corroborated by another witness. "[W]hen conflicting evidence is presented at trial, a conviction is not against the manifest weight of the evidence simply because the [trier of fact] believed the prosecution testimony." State v. Gilliam (Aug. 12, 1998), 9th Dist. No. 97CA006757.
Second, to find Mr. Tanner guilty on the charge of willful or wanton operation of a motor vehicle, in violation of R.C. 4511.20, the prosecution needed to prove beyond a reasonable doubt that Mr. Tanner: (1) operated a vehicle on any street or highway, (2) in willful or wanton disregard of the safety of persons or property. The Supreme Court of Ohio, in State v. Earlenbaugh (1985), 18 Ohio St.3d 19, 21-22, held that:
"A person may be found guilty of violating R.C. 4511.20 if he acts willfully. Such conduct implies an act done intentionally, designedly, knowingly, or purposely, without justifiable excuse. Or, conversely, R.C. 4511.20 is violated when a person acts wantonly in disregard of the safety of others. A wanton act is an act done in reckless disregard of the rights of others which evidences a reckless indifference of the consequences to the life, limb, health, reputation, or property of others. Similarly, when the operator of a vehicle, with full knowledge of the surrounding circumstances, recklessly and inexcusably disregards the rights of other motorists, his conduct may be characterized as wanton." (Internal citations omitted.)
The evidence reveals that, after approaching Mr. James and Ms. Chaney in his car and yelling angrily as he drove, Mr. Tanner hit Mr. James and proceeded to drive away. Mr. James testified that he was confused and held onto the car, trying to regain his balance as Mr. Tanner drove along the street. Mr. James stated that he held on merely by his fingertips as the car continued to move. He stated that, eventually, he fell to the ground and that Mr. Tanner continued to drive away. Mr. Schaefer testified that Mr. James appeared to hold onto the car only to steady himself after he was hit. He testified that Mr. Tanner never stopped the car in spite of the fact that Mr. James was hanging on with both hands as he was dragged along. He stated that Mr. James fell onto the street as the car picked up speed. Mr. Tanner himself testified that he knew that Mr. James was holding onto his car after being hit in the face.
Although Mr. Tanner presented conflicting testimony regarding the incident, specifically that he ensured that Mr. James was safely away from his car before driving off and, further, that he stopped the car when he realized that Mr. James was holding on, we will not overturn the verdict because the trial court believed Mr. James, whose testimony was corroborated by another witness. See Gilliam, supra. The evidence in the present case was such that the trier of fact could conclude that every element of the offense of operating a motor vehicle with willful or wanton disregard of safety for persons had been established.
After a careful review of the record, we cannot conclude that the trier of fact lost its way and created a manifest miscarriage of justice when, first, it found Mr. Tanner had not acted in self-defense and convicted Mr. Tanner of assault, in violation of R.C. 2903.13(A), and, second, when it convicted Mr. Tanner of willful or wanton operation of a motor vehicle, in violation of R.C. 4511.20. Accordingly, we hold that Mr. Tanner's convictions were not against the manifest weight of the evidence.
 Sufficiency
"Because sufficiency is required to take a case to the [trier of fact], a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency." (Emphasis omitted.) State v. Roberts (Sept. 17, 1997), 9th Dist. No. 96CA006462. Having already found that Mr. Tanner's convictions were not against the manifest weight of the evidence, we conclude that there was sufficient evidence to support the verdict in this case. Consequently, Mr. Tanner's first and third assignments of error are overruled.
 B. Second Assignment of Error "The trial court assessed a penalty beyond the scope of its authority."
In his second assignment of error, Mr. Tanner asserts that the trial court erred when it imposed a $250 fine for the charge of willful or wanton operation of a motor vehicle, in violation of R.C. 4511.20. Specifically, Mr. Tanner avers that a charge brought pursuant R.C. 4511.20
is statutorily defined as a minor misdemeanor, and, consequently, under R.C. 2929.21(D), the maximum fine that could be imposed was $100. We disagree.
Mr. Tanner was charged with a violation of R.C. 4511.20. That statute itself does not describe either the degree of offense or the penalty to be imposed for its violation; rather, such information is contained within R.C. 4511.99. See, generally, State v. Tamburin (2001),145 Ohio App.3d 774. The degree of offense and penalty for a violation of R.C. 4511.20 varies in relation to the number of certain previous violations or circumstances surrounding the current violation. R.C.4511.99(D). Further, pursuant to R.C. 2929.21, the penalty for a misdemeanor will also vary according to the degree of the misdemeanor. Consequently, as Mr. Tanner's sole argument relates to his assertion that, by definition, a violation of R.C. 4511.20 must be a minor misdemeanor for which $100 is the maximum fine that can be imposed, his argument is without merit. Contrary to Mr. Tanner's assertion, a violation of R.C. 4511.20 does not only permit the imposition of a $100 penalty, and, as Mr. Tanner has not pointed to any other error in the trial court's sentencing or judgment entry, his second assignment of error is overruled.
 III.
Mr. Tanner's assignments of error are overruled. The judgments of the Wadsworth Municipal Court are affirmed.
BAIRD, P.J., CARR, J. CONCUR.
[1] Pursuant to App.R. 9(A) and Loc.R. 5(A)(1)(b), appellant presented a videotape recording of the proceedings, typing out the evidentiary portions and certifying their accuracy. As appellee has failed to file a brief or assert any error on the part of appellant, this court presumes that all necessary evidence to decide this appeal is presently before the court.