OPINION
WINDHAM, Associate Judge.
SUMMARY
Defendant was charged with four counts as follows: 1. Falsification to authorities, 2. Forgery, 3. Deceptive practices and 4. Felony theft. The first three were dismissed on defense motions, but the felony theft charge was presented to the jury which found her guilty. The Tribal Court sentenced her to 10 days house arrest and ordered restitution in the sum of '$6,589.16. Defendant filed a timely appeal.
The facts giving rise to this prosecution began with the Tribes taking possession in the mid-1990s of certain property in Hot Springs which was originally used by Tribal Forestry personnel and then as rental units. Forestry was a reluctant landlord and when, in early 1999, the property was raided as a meth lab, they prevailed upon the Tribal Division of Lands to assume responsibility for managing the property.
*89 The property included two double wide mobile homes, a yellow (or beige) one and a green one. This prosecution is about the green double wide mobile home. Both of these units remained on Forestry inventory as of December 2001. Sheila Garrison of that agency, upon becoming aware of this fact, commenced an inquiry as to the status of this property.
Her investigation revealed that a small white house on the property which had been contaminated by the illegal activity had been burned as a training exercise for the Hot Springs Fire Department. The yellow trailer had been sold for $7,000 and remained on the property. The green trailer wound up in the Ronan area being occupied as the home of defendant’s daughter. Just how that came to pass was the subject of the trial.
The prosecution’s evidence was to the effect that defendant had abused her position as a homesite technician and had manipulated the system so as to deprive the Tribe of valuable property. The evidence included an agreement to “self the green trailer to defendant’s son for zero dollars signed by Chairman Matt”. His signature was notarized by defendant. (Exhibit 10) in briefing papers prepared by defendant and presented to Council in connection with the sale of the yellow trailer, defendant recited that the Council had previously granted permission to “dispose” of the green trailer. No record of the actual authorization could be found. Defendant did not put on a case, but through cross-examination and the introduction of a taped interview with defendant (Exhibit 11) her attorney was able to present to the jury the contentions that the green trailer was of no value, that it was possibly contaminated by chemicals used in meth production, and that defendant, acting in good faith, was authorized to “salvage” the green trailer.
ISSUES PRESENTED
The issues may be divided into two distinct categories; first, was defendant properly convicted. This inquiry may be further divided into two questions. Was the jury properly instructed and was the evidence sufficient as a matter of law? The second category has to do with the propriety of the restitution order.
WAS THE DEFENDANT PROPERLY CONVICTED?

The Jury Instructions

Defendant proposed the following key instruction:
“Issues in Theft by Deception
To convict the defendant of the charge of Theft by Deception, the Tribes must prove the following elements:
1. That between May 5, 2000, and May 24, 2001, at Pablo, Hot Springs, and Poison, in Montana, on the Flathead Reservation,
2. The Defendant, acting purposely or knowingly,
3. Either on her own or through others for which she is legally accountable, exerted or obtained unauthorized control by deception over a 1978 Marlette mobile home.
4. That at the time described the property was owned by the Confederated Salish & Kootenai Tribes,
5. That the 1978 Marlette mobile home was worth more than $1,000.00 at the time described.
fi. That during the time described the Defendant used or concealed the property knowing that such use or concealment would probably deprive the Confederated Salish and Kootenai Tribes of the 1978 Marlette mobile home,
*90 7. That the Defendant did not have a good faith belief that she was authorized to salvage the 1978 Marlette mobile home,
8. That the Defendant did not have a good faith belief (even an unreasonable one) that the 1978 Marlette mobile home had been used in connection with a methamphetamine laboratory.
If you find from your consideration of the evidence that any of these elements has not been proved beyond a reasonable doubt then you must find the defendant not guilty.
If, on the other hand, you find from your consideration of the evidence that all of these elements have been proved beyond a reasonable doubt, then you should find the defendant guilty.”
On the Prosecution’s motion, the Court struck proposed elements 7 and 8 and gave the balance as instruction F-4.
This case presents the conundrum which has troubled courts for many years, it is axiomatic that, in a criminal prosecution, the government has the burden of proving each and every element of the crime charged, beyond a reasonable doubt. If intent is an element of that crime, then in seems to follow that any mental state which affects the necessary intent becomes a part of the prosecution’s burden. Therefore, the argument goes, if, for example, the defendant claims that in his mind he was shooting Satan and not his wife, the prosecution must prove the contrary beyond a reasonable doubt Similarly, if defendant believed that the victim was pointing a loaded pistol at him with evil intent, rather than a lighter with the intent to offer him a light, then the defendant need only raise the issue and the prosecution must then go forward with evidence negating this contention ... and prove this negative proposition beyond a reasonable doubt.
This Court had occasion to visit the issue in CSKT v. Melvin Madplume Cause No. AP-02-1258-CR, 2004 WL 5586268 (2004) This was a prosecution under the Tribal “joyriding” statute which includes as a defense that “the offender reasonably believed that the owner would have consented to the offender’s operation of the motor vehicle if asked”. In that case, we declined to give the prosecution the burden of proving the negative of the proposition. While the defense was not raised at all at trial and, consequently, the resolution of this question was not necessary to the result, we held, for the guidance of the trial courts that, by analogy to the defense of self-defense (Section 2-1-304 CS & K Laws Codified), a defendant charged with unauthorized use and wishing to raise the defense provided by subdivision (2) has the burden of raising a reasonable doubt as to the intent to deprive the owner of the use of a motor vehicle by introducing evidence to the effect that the defendant reasonably believed that the owner would have consented to the offender’s operation of the motor vehicle if asked.
In this holding we followed the teaching of the United States Supreme Court in the case of Martin v. Ohio, 480 U.S. 228, 107 S.Ct. 1098, 94 L.Ed.2d 267. This was a murder prosecution Under Ohio law. Defendant had shot her husband and claimed self-defense. The relevant Ohio statute required that for this defense to prevail, the defendant had the burden of proving it by a preponderance of the evidence. The conviction was upheld by a 5 to 4 majority. In dissent Mr. Justice Powell posed the issue succinctly as follows: “It makes no sense to say that the prosecution has the burden of proving an element beyond a reasonable doubt, and that the defense has the burden of proving the contrary by a preponderance of the evidence” 480 U.S. at 238 fn. 1, 107 S.Ct. 1098.
*91 The majority held that the instructions to the jury, considered as a whole, fairly stated the prosecution’s burden of proving each element of the crime, including the necessary intent, beyond a reasonable doubt and that the conviction was not constitutionally infirm. This was also the reasoning of the Ninth Circuit Court of Appeals in U.S. v. Mason, 902 F.2d 1434 (9th Cir.1989). In that case, defendants were charged with bank fraud and racketeering based on a credit card scheme designed to conceal the fact that the charges were for prostitution. Defendants contended that they were operating as informants for the FBI and were authorized to operate as they did and that the jury was not adequately instructed as to this defense. The Court held that even though the failure to instruct on this defense was reversible error, it was sufficient if other instructions, in their entirety, adequately covered the defense theory.
Elements 2, 3 and 4 of Instruction F-4 required the jury to find beyond a reasonable doubt that the defendant “acting purposely and knowingly ... Either on her own or through others for which she is legally accountable, exerted or obtained unauthorized control by deception over a 1978 Marlette mobile home (w'hich) at the time ... was owned by the Confederated Salish & Kootenai Tribes” Having done so, the jury necessarily found beyond a reasonable doubt that she did not have a good faith belief that she was authorized to salvage the Tribe’s property. Paragraph 8 of the instruction would have added nothing to the determination of whether defendant believed she was authorized to have the Tribe transfer the trailer to her son for nothing.
We hold that the jury was adequately instructed.

Wa,s the Evidence Sufficient to Convict ?

Both the Tribe and the Defendant cite and rely on Jackson v. Virginia 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) This case holds that due process requires, at a minimum, that a judgment of acquittal be entered when the evidence adduced at trial, viewed in the light most favorable to the government, is such that no rational trier of fact could have found proof beyond a reasonable doubt, or, stated in the affirmative, if any rational trier of fact, based on the evidence construed in favor of the prosecution, could have found guilt beyond a reasonable doubt, then the conviction must be affirmed.
The evidence was sufficient to show7 that defendant had contrived to secure the Tribe’s property for the benefit of her family without paying for it. She created the paperwork involved. The briefing papers appear to have been artfully drafted to make a false record of Council authorization to “salvage” the trailer. The actual recitation was of authority to “dispose of’ the property. This could include selling the unit for reasonable value. There was evidence that, aside from being dirty, the trailer was in reasonably good condition. Defendant was obviously willing to have her daughter live in it. Furthermore, Sheila Garrison of Tribal Forestry testified that defendant told her that the green trailer had been “scrapped”. This was at a time when defendant knew full wTell that the green trailer had been transported from Hot Springs for use by her family.
We hold that the Jackson standard has been satisfied. The Trial Court did not err in denying Defendant’s motion for acquittal.
WAS RESTITUTION PROPERLY ORDERED?
Restitution in the sum of $6,589.16 was ordered. This was composed of *92 $3,589.16 claimed to represent the cost of moving the trailer from Poison to Ronan and $3,000 as the estimated cost of moving it from Ronan to some undetermined future location. The first figure appeared in an unattributed briefing paper and was otherwise unsubstantiated. The testimony at trial was that some unidentified Tribal agency had paid approximately half of an estimated $4,000 for moving the unit from Poison to Ronan. In her taped statement, admitted into evidence as exhibit 11, defendant stated that her son had paid all the moving costs. The jury was not called upon to determine the truth on this point. The $3,000 figure is based on an event which may never occur.
There are, however, more fundamental defects in the restitution order. If defendant had been convicted of stealing $6,589.16, restitution in that amount would have been entirely proper. But that is not the case. Defendant was neither charged with nor convicted of defrauding the Tribe out of the moving costs. The United States Supreme Court recently had occasion to pass upon the practice of sentencing defendants based on factors of which there has been no conviction. In Blakely v. Washington 540 U.S. 965, 124 S.Ct. 429, 157 L.Ed.2d 309 (2003) defendant, pursuant to a plea bargain, pled guilty to second-degree kidnaping. The defendant had abducted his estranged wife, bound her with duct tape and forced her at knifepoint into a wooden box in the bed of his pickup; all in an effort to get her to dismiss her divorce suit. The trial judge enhanced defendant’s sentence because he had acted with “deliberate cruelty”. The Supreme Court reversed, holding that the state could not constitutionally punish a defendant based on factors which a defendant neither admitted nor was convicted of.
The second component of the restitution order is based upon the assumption that the Tribe will recover ownership and possession of the green trailer. That may not be feasible. Title to this property is now in defendant’s son Lance. According to defendant’s taped statement, her daughter is buying it from him. She also stated that her children had the trailer professionally cleaned and that other improvements have been made. While one cannot acquire good title from a thief, title was acquired by Lance from the Tribe; and he is now apparently selling it to his sister. Neither of these individuals have been implicated in their mother’s wrongdoing and one or both have expended either money or labor in improving the property. It is now the daughters home. It would not be equitable, under these circumstances to take the green trailer.
Still, defendant was convicted of stealing it and concedes that some restitution is appropriate and proper. She offers the sum of $2,500, which may or may not be an appropriate amount. Defendant did not object to the Court holding the restitution proceedings and under the circumstances this would be proper.
DISPOSITION
The judgment of conviction is AFFIRMED. The Order of Restitution is VACATED and the cause is remanded to the Trial Court with instructions to hold a new hearing, receive evidence as to the reasonable value of the trailer at the time it was removed from Hot Springs, as well as the amount, if any, expended by the Tribe to move it.
WE CONCUR: CHUCK WAI 1 Associate Justice, ROBER1 CAL THIER, Associate Justice.