DECISION AND JOURNAL ENTRY
Defendant Tyrone Williams appeals his conviction in the Summit County Court of Common Pleas on one count of murder. We affirm.
In 1992 or 1993, Defendant, who was married, began a romantic relationship with Ernestine Mitchell. Ernestine had two sons, Dale and Daran, from a previous relationship. The relationship between Defendant and Ernestine lasted for three or more years when it was terminated.
In 1997, an incident occurred between Defendant and Dale and Daran. There was some dispute as to who initiated the confrontation and the extent of Defendant's injuries. What is clear is that the windows to Defendant's car were broken. However, only Defendant was charged as a result of the conflict.
On May 31, 1999, Ernestine and Daran attended a graduation party for Daran and a cousin at the house of Angie Walker, Ernestine's sister. By 7:30 p.m., Ernestine left the party and returned to her home on Cole Avenue in Akron, Ohio. After she was in the house, Defendant knocked on the door and asked to talk to her. She stepped out onto the porch with him and said she did not wish to speak with him. Defendant told her that he wanted to get back together with her, but she insisted that she did not want that. Defendant reached into his pocket, took out a large wad of money, and said, "You know you miss this. You know you miss this money[.]" Ernestine knocked the money out of his hands twice and told him that she would call the police if he did not leave. He left the porch and entered his car. He then spun his tires while backing out of the driveway, and drove to the house of Juanita Davison on the other side of Cole Avenue.
Juanita saw Defendant pull up to Ernestine's house. Juanita saw Defendant throw money on the porch. It was apparent from her reaction that Ernestine did not want Defendant there. Juanita heard Ernestine tell him to take his money and leave. Defendant got into his car, loudly exited the driveway, and drove over to Juanita's house. He asked for a beer, and she told him to go buy a beer somewhere else. After speaking briefly with Ernestine's brothers, Gary and Kenny, Defendant drove away.
At about 8:00 p.m., Daran drove to his house with two of his friends, Marcus Scott and Dedrick Williams. The three sat on the porch discussing their plans to enlist in the Marine Corps, while Ernestine warmed food for them to eat. Defendant drove up, parked his car across the street from Ernestine's house, and walked across the lawn. As Defendant approached the house, Daran told him that he was not welcome and that he should leave. Defendant said that he wanted to speak with Ernestine, and Daran replied that she was not home. Defendant ascended the stairs to the porch and went to push aside Daran, who had blocked the way to the door. Daran pushed Defendant, who took two steps backwards and down one or two of the stairs. None of the three boys on the porch had or wielded a weapon. Defendant then pulled out a pistol, pointed it at Daran's chest at close range, and fired once.
Daran grabbed his chest and walked into the house. Defendant pointed the gun at Marcus and Dedrick and said, "Do you want some? Are you bad?" Marcus and Dedrick replied, "No, we don't want none." Defendant then walked down the stairs and across the lawn and said, "I killed that m* * * * * f * * * *r. I am going to jail tonight. He's not so bad now, is he."
Inside the house, Ernestine heard a sound like a firecracker. She then saw Daran enter the house clutching his chest. Between the front room and the kitchen, Daran fell face first to the floor. Ernestine tried to call 911 but was unable to do so. She went onto the porch screaming for Juanita to call 911 because Defendant had killed Daran. From the lawn, Defendant turned, pointed the gun at Ernestine, and threatened to shoot her. Marcus and Dedrick grabbed her and retreated to the house. Defendant shouted, "Let the m* * * * * f * * * *r die. I hope he dies." For no apparent reason, Defendant then wandered in the street between his car and the lawn of Ernestine's house until just before the police arrived, at least fifteen minutes later.
Juanita witnessed Defendant arrive at Ernestine's house the second time. She saw Defendant walk toward the house demanding to talk to Ernestine. When he reached the steps to the porch, Defendant shouted at Daran and flung his glasses to the ground. He ascended the steps, and Daran pushed him. Juanita then saw Defendant shoot Daran. She never saw a weapon in the hands of Daran, Marcus, or Dedrick. Defendant then left the porch. After Ernestine cried for her to call 911, Juanita did so. Defendant paced in the street until just before the police arrived.
Officers of the Akron Police Department and paramedics arrived. The paramedics took Daran in an ambulance, but he was declared dead soon after arrival. Not long after the police arrived, Defendant returned in his car with a passenger. An angry crowd surrounded the car and shouted that Defendant had shot Daran. The police got Defendant and his passenger out of the car. Defendant told them that the gun was in the car; it was found on the passenger seat. He was then arrested and taken to police headquarters.
At the police station, Detective Michael Shumaker entered an interview room where Defendant was seated, to perform a gunshot residue test on Defendant's hands. In response to Detective Shumaker's statements about his purpose, Defendant said, "Damn right I fired a gun and I hope I hit him." Detective Shumaker told Defendant that he was only going to perform the test and that he (Defendant) would be given the opportunity to talk later.
After performing the residue test, Detective Shumaker learned that the detectives on the scene at Cole Avenue asked that he perform the initial interview with Defendant. Detective Shumaker then reentered the interview room, read Defendant his Miranda rights, and asked if he wanted to say anything. Defendant replied, "There is really nothing to talk about. I shot the boy." Defendant then recounted the events of the evening. When asked how long he knew Daran, Defendant said, "A long time. That's Ernestine's son. Daran's the one I shot. I hope I did. That's who I aimed at." He went on to say later, "I shot him because he was coming at me. Well, I got him off of me. I wish I had killed him. I don't wish anyone to die, but I ain't going to take no a * * whooping. I ain't — don't tell me what I am going to do. I will show you. Don't show me what I am going to do. I will show you."
Defendant was indicted by the Summit County Grand Jury on one count of murder, in violation of R.C. 2903.02(A), with a firearm specification. The indictment was later supplemented with one count of having a weapon under a disability, in violation of R.C. 2923.13(A)(2); an additional count of murder, in violation of R.C. 2903.02(B); and one count of felonious assault, in violation of R.C. 2903.11(A)(1). Defendant later pleaded guilty to the charge of having a weapon under a disability, and the second murder charge and the aggravated assault charge were dismissed by the State at trial.
A jury trial was held on November 9-12, 1999. After deliberating, the jury found Defendant guilty of murder and of the firearm specification. The trial court then sentenced him accordingly. Defendant timely appealed to this court.
Defendant asserts four assignments of error. We will address each in due course, rearranging their order to facilitate discussion.
 Assignment of Error IV THE TRIAL COURT ERRED TO THE MATERIAL PREJUDICE OF [DEFENDANT] IN ADMITTING INTO EVIDENCE TESTIMONY OF PRIOR BAD ACTS OF [DEFENDANT], BOTH ALLEGEDLY COMMITTED BY [DEFENDANT] AND ACTUALLY COMMITTED BY [DEFENDANT], ON CROSS-EXAMINATION OF [DEFENDANT]. THIS ERROR DEPRIVED [DEFENDANT] OF HIS RIGHT TO A FAIR TRIAL GUARANTEED BY THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND ARTICLE ONE, SECTION SIXTEEN OF THE OHIO CONSTITUTION.
 Defendant contends in his fourth assignment of error that the trial court abused its discretion by permitting the State to question him on cross-examination about prior bad acts. He specifically points to the incident between himself and Dale and Daran in 1997, when the windows of his car were broken.[1] Defendant argues that the introduction of this evidence was impermissible. His contentions lack merit.
Evid.R. 404(B) states:
 Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
 Accord R.C. 2945.59. "The admission or exclusion of relevant evidence rests within the sound discretion of the trial court." State v. Sage
(1987), 31 Ohio St.3d 173, paragraph two of the syllabus. An abuse of discretion is more than an error of judgment, but instead demonstrates "perversity of will, passion, prejudice, partiality, or moral delinquency." Pons v. Ohio State Med. Bd. (1993), 66 Ohio St.3d 619, 621. When applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. Id.
On direct examination, Defendant gave his version of what happened between himself and Dale and Daran in 1997 and stated that they smashed his car windows and beat him up, and that Daran hit his knees with a hammer. On cross-examination, the following exchange occurred:
 Q [by the prosecutor]: And the boys were not charged there, were they?
 A [by Defendant]: No. I was going to press charges. * * *
* * *
Q. Who got charged?
[Co-counsel for Defendant]: Objection.
[Other co-counsel for Defendant]: Objection.
THE COURT: Overruled.
* * *
 Q. Who got charged that night? Who got charged that night on Prange Drive?
A. Charged for what?
Q. Who got charged? Did you get charged?
 A. I don't understand the question, what you talking about charge?
 Q. Did you get charged with a criminal offense that night on Prange Drive?
A. Yes, yes.
 Defendant contends that this was contrary to Evid.R. 404(B) and R.C. 2945.59.
We conclude that the questioning by the prosecutor, and the answer elicited, did not violate Evid.R. 404(B) and R.C. 2945.59. During his testimony, Defendant stated that he was not at fault for the 1997 incident and that he and his property were attacked by Dale and Daran. This testimony opened the door for the State to inquire about who was in fact charged criminally as a result of the incident. The trial court did not abuse its discretion. The fourth assignment of error is overruled.
 Assignment of Error I THE TRIAL COURT INCORRECTLY DENIED [DEFENDANT'S] MOTION FOR ACQUITTAL IN VIOLATION OF CRIMINAL RULE 29; SPECIFICALLY, THERE WAS NOT SUFFICIENT EVIDENCE TO PROVE THE OFFENSE OF MURDER BEYOND A REASONABLE DOUBT.
 Assignment of Error III THE TRIAL COURT ERRED TO THE PREJUDICE OF [DEFENDANT] AND IN VIOLATION OF CRIMINAL RULE 29(A), ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION AND THE FOURTEENTH AMENDMENT TO THE CONSTITUTION OF THE UNITED STATES, WHEN IT DENIED [DEFENDANT'S] MOTION FOR ACQUITTAL.
 Defendant's first and third assignments of error both address whether the trial court should have granted Defendant's motion for acquittal on the charge of murder. He argues that there was insufficient evidence that he acted purposely. We disagree.
Crim.R. 29(A) provides that a trial court "shall order the entry of a judgment of acquittal * * * if the evidence is insufficient to sustain a conviction of such offense or offenses." A trial court may not grant an acquittal by authority of Crim.R. 29(A) if the record demonstrates that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt.State v. Wolfe (1988), 51 Ohio App.3d 215, 216. In making this determination, all evidence must be construed in a light most favorable to the State. Id.
R.C. 2903.02(A) states: "No person shall purposely cause the death of another[.]" "A person acts purposely when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature." R.C. 2901.22(A). See, also, State v.Shue (1994), 97 Ohio App.3d 459, 466-68.
Viewing the evidence in a light most favorable to the State, we find that there was sufficient evidence that Defendant acted purposely when he shot Daran. After a verbal exchange, Daran pushed Defendant, who did not fall down the steps or to the ground. Defendant then pulled out a pistol, leveled his arm, pointed the pistol at Daran's chest, and fired. Afterwards, Defendant made repeated statements that he killed Daran and hoped that Daran died. Defendant's actions and statements support a finding that it was his specific intention to cause Daran's death.
The trial court did not err by denying Defendant's motion for acquittal. The first and third assignments of error are overruled.
 Assignment of Error II THE CONVICTION OF [DEFENDANT] FOR THE CHARGE OF MURDER IN THIS CASE IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND SHOULD BE REVERSED.
 For his second assignment of error, Defendant argues that his conviction was against the manifest weight of the evidence. He again addresses the issue of whether he acted purposely and also argues that the manifest weight of the evidence supported a finding that he acted in self-defense. We disagree.
When a defendant asserts that his conviction is against the manifest weight of the evidence,
 an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.
 State v. Otten (1986), 33 Ohio App.3d 339, 340. This discretionary power should be invoked only in extraordinary circumstances when the evidence presented weighs heavily in favor of the defendant. Id.
 Self-Defense
We first address Defendant's argument that the manifest weight of the evidence supported a finding that he acted in self-defense. A defendant who asserts the affirmative defense of self-defense has the burden of proving the matter by a preponderance of the evidence. State v. Martin
(1986), 21 Ohio St.3d 91, syllabus, affirmed (1987), 480 U.S. 228,94 L.Ed.2d 267. See, also R.C. 2901.05(A). In cases involving deadly force and self-defense,
 the following elements must be shown: (1) the [defendant] was not at fault in creating the situation giving rise to the affray; (2) the [defendant] has a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape from such danger was in the use of such force; and (3) the [defendant] must not have violated any duty to retreat or avoid the danger.
 State v. Robbins (1979), 58 Ohio St.2d 74, paragraph two of the syllabus. "In most circumstances, a person may not kill in self-defense if he has available a reasonable means of retreat from the confrontation." State v. Williford (1990), 49 Ohio St.3d 247, 250. The failure to prove any one of the elements negates a claim of self-defense. State v. Jackson (1986), 22 Ohio St.3d 281, 284.
The only evidence supporting a theory of self-defense came from Defendant's testimony. Defendant stated that he knew Daran had a propensity for violence. Defendant testified that on May 31, 1999, he went to Ernestine's house looking for her brother Kenny. He approached the house and ascended the stairs to the porch without uttering a word, when Daran punched him, knocking him to the porch and causing his glasses to fly off his face, landing on the front lawn. He then got up off the porch, turned, and descended the steps when one of Daran's friends said "no" or "look out." Defendant turned around to see Daran coming at him with a metal pipe three or four feet in length. Defendant then drew his gun and shot Daran.
Even if believed, Defendant's own testimony does not support a finding of self-defense. When confronted by a pipe-wielding attacker while on the attacker's front porch, Defendant did not flee or otherwise seek to retreat. Instead, he pulled out a gun and fired at the attacker's chest at close range. Defendant thereby violated his duty to retreat. Any conclusion that Defendant acted in self-defense was untenable.
 Acting with Purpose
Defendant also argues that the manifest weight of the evidence supported his view that he did not act with the requisite mental state of purpose. His only evidentiary support in that regard is his own testimony, in which he states that he did not intend to kill Daran but only injure him and thereby protect himself.
The State produced numerous witnesses, including Ernestine Mitchell, Marcus Scott, Dedrick Williams, Juanita Davison, and Detective Shumaker. Defendant's testimony flatly contradicted that of each of these witnesses and of other witnesses. The evidence does not weigh heavily in Defendant's favor, and the jury was entitled to disbelieve his testimony. See State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
The conviction for murder was not against the manifest weight of the evidence. Accordingly, the second assignment of error is overruled.
Defendant's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the County of Summit, Court of Common Pleas, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellant.
Exceptions.
 ___________________________ LYNN C. SLABY
CARR, J. WHITMORE, J. CONCUR
[1] Defendant implies that there were other instances where impermissible "bad acts" evidence was introduced. However, because he only raises the cross-examination relating to the 1997 incident in his brief, we limit our review accordingly.