This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Appellant, James Paletta, appeals his conviction in the Lorain County Court of Common Pleas. We affirm.
 I.
On April 18, 1997, the Lorain County EMS and Lorain County Sheriff's Department responded to a 911 call placed at 34021 Cooley Road in Lorain County, Ohio. Upon their arrival, the officers broke up a fight between Mr. Paletta and his neighbor Marcus McDaniel. The EMS first took Mr. Paletta to the Elyria Memorial Hospital where he was treated for a bloody nose and facial abrasions. Upon discharge from the hospital, he was arrested by the Lorain County Sheriff's Department. Mr. Paletta was indicted by the Lorain County Grand Jury on June 11, 1997 for four counts of felonious assault, in violation of R.C. 2903.11, and one count of discharging a firearm at or into a habitation or school safety zone, in violation of R.C. 2923.161. Each charge had a firearm specification.
A jury trial was held on September 19, 2000. At trial, Mr. Paletta testified that, on the day of the incident, he had been involved in two altercations. The first altercation occurred when his brother-in-law, John Ashford, played a joke on Mr. Paletta and hid an expensive saw that had been placed in the back of his truck. Mr. Paletta stated, and Mr. Ashford corroborated, that a fight ensued which resulted in Mr. Paletta receiving a swollen lip. The second altercation occurred when Mr. Paletta returned to his home, a mother-in-law suite attached to Mr. McDaniel's house.
Mr. Paletta testified that, upon arriving home from work, he saw that Mr. McDaniel's ex-wife, Rhonda McDaniel, and their two children, Allison and Brian, were visiting Mr. McDaniel. He stated that the two children soon came over to play with his video games. According to Mr. Paletta, Ms. McDaniel came over a few minutes later to warn him that Mr. McDaniel was angry with Mr. Paletta for dating Mr. McDaniel's ex-girlfriend. During her visit, Mr. Paletta stated that he heard gunshots and became scared when Ms. McDaniel told him that Mr. McDaniel was firing his gun outside. At that point, Mr. McDaniel entered the home uninvited and began to beat upon Mr. Paletta. Mr. Paletta reached for his knife to defend himself but Mr. McDaniel knocked it away and continued to pummel Mr. Paletta.
When Mr. McDaniel left, Mr. Paletta stated that he was in an angry and scared state. He testified that he reacted by going out to his truck, which was parked in the driveway, removing his Remington 1100 shotgun from its case, and loading shells from the glove compartment into the gun. He further testified that he took a couple of steps toward the McDaniel's home, noticed that everyone was in the house, stated "[t]wo can play at this game," and fired one shot into the air. Further, Mr. Paletta testified that, though he had told the sheriffs who tape recorded his testimony that he drank only three beers at lunch, he had forgotten to mention that, at the time of the incident, he had drunk six beers throughout the day and felt he was drunk when the incident occurred.
Allison McDaniel testified that she was ten years old at the time of the incident. She remembered standing on a step outside her father's door with her brother and parents when Mr. Paletta aimed his gun at her father. She stated that, when the gun fired, she ran into the house to call 911 because she heard her mother scream and thought that her brother had been shot.
Robert Perkins, Deputy Sheriff of the Lorain County Sheriff's Department, responded to the 911 call and assisted in the investigation by preparing a diagram of the scene. He testified that the porch light next to Mr. McDaniel's door had been damaged and there was evidence of shotgun BB's hitting the side of the house. While admitting that he was not an expert, he felt that the damage to the house as well as the glass and wood fragments were "fresh[.]" Lieutenant Luis Silva of the Lorain County Sheriff's Department testified that he had taken pictures at the scene and noticed wood and glass debris on the ground from the damaged portion of the house. Lieutenant Silva also stated that, when he went into Mr. Paletta's home, he saw blood splattered on the walls and floor. He noted that, when he later recorded Mr. Paletta's testimony, he smelled alcohol and felt Mr. Paletta to be slightly intoxicated. Deputy Steven Lewis of the Lorain County Sheriff's Department stated that he had an opportunity to look at the damage to the house and explained that, while the pattern from a shotgun fired straight at a target would be circular, here the pattern appeared to be elongated. In his report of the incident, Deputy Lewis wrote that Mr. Paletta appeared "highly intoxicated[.]"
Mr. McDaniel testified that Mr. Paletta was already badly injured and bleeding when he began the fight. He testified that, after his fight with Mr. Paletta, he returned to the step outside the door of his house near his ex-wife and children. Though he stated that he did not see whether Mr. Paletta aimed the gun at his family, at some point he heard his ex-wife scream followed by a blast, whereupon he saw shrapnel flying above his daughter's head. Mr. McDaniel reacted by running out in the yard and tackling Mr. Paletta. The two continued to fight until assistance arrived. He stated that, in his opinion, Mr. Paletta had probably been drunk.
Ms. McDaniel testified that Mr. Paletta aimed the gun at her family, and, when the shot was fired, the pellets sprayed, some landing in her hair. During cross-examination, she admitted that she had failed to tell about the pellets in her original testimony to the Sheriff's office. Ms. McDaniel also testified that she had gone over to Mr. Paletta's before her husband arrived. She stated that Mr. Paletta was already badly injured from his earlier altercation. When asked whether she heard gunshots going off while she was visiting, she responded that she did hear a loud sound but she did not know whether it had been gunshots. She further denied telling Mr. Paletta that her husband had been shooting his gun.
On September 26, 2000, the jury returned a verdict of not guilty as to each of the four counts of felonious assault and guilty as to the one count of discharging a firearm at or into a habitation or school safety zone. On October 13, 2000, Mr. Paletta was sentenced to a term of two years for discharging a firearm at or into a habitation. An additional term of three years was imposed for the firearm specification as a mandatory and consecutive term pursuant to R.C. 2929.14(D)(1). This appeal followed.
 II.
Mr. Paletta asserts seven assignments of error. We will discuss the third, fourth, and fifth assignments of error together to facilitate review. We will also discuss the sixth and seventh assignments of error together for similar purpose.
 A. First Assignment of Error THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT BY RULING THAT THE STATE BE PERMITTED TO INTRODUCE INTO EVIDENCE AT TRIAL SELECTED PORTIONS OF THE DEFENDANT'S TAPE-RECORDED CONFESSION GIVEN TO THE POLICE.
Mr. Paletta asserts that the trial court erred when, in response to the prosecutor's oral motion in limine, it ruled that the state was permitted to introduce only selected portions of a tape-recorded statement that he had made to the police. We disagree.
"The admission or exclusion of relevant evidence rests within the sound discretion of the trial court." State v. Sage (1987), 31 Ohio St.3d 173, paragraph two of the syllabus. Therefore, this court will not reverse a trial court's determination on the admission or exclusion of evidence absent an abuse of discretion. An abuse of discretion is more than an error of judgment, but instead demonstrates "perversity of will, passion, prejudice, partiality, or moral delinquency." Pons v. Ohio StateMed. Bd. (1993), 66 Ohio St.3d 619, 621.
Mr. Paletta argues that the trial court erred when it permitted the state to introduce only selected portions of a tape-recorded statement that he made to police. In making this argument, Mr. Paletta relies heavily on Morehead v. State (1877), 34 Ohio St. 212. Morehead "holds that where the State offers in evidence a part of a declaration or conversation of the accused, under an exception to the hearsay rule, the whole of such declaration or conversation should be admitted, including both inculpatory and exculpatory parts." State v. Caldwell (Aug. 24, 1990), Crawford App. No. 3-89-20, unreported, 1990 Ohio App. LEXIS 4051, at *4, citing Morehead, 34 Ohio St. at 213. Morehead is inapplicable to this case, however, as the state made a determination at trial to not offer into evidence Mr. Paletta's taped conversation. Rather, the state made reference to the transcript only to refresh a witness' memory and to impeach by showing a prior inconsistent statement of a witness.
Under Evid.R. 612, a witness can use a writing to refresh his or her memory for the purpose of testifying while testifying. Though the refreshed recollection in the form of testimony is the evidence, not the writing, the adverse party is then entitled to inspect the writing, to cross-examine the witness thereon, and to introduce into evidence the portions relating to the testimony of such witness. Evid.R. 612.
Under Evid.R. 613, a witness can be examined concerning a prior statement. Evid.R. 613(A) "provides that a witness's prior inconsistent statement may be used to impeach the credibility of a witness where a proper foundation has been laid for the introduction of the prior inconsistent statement and opposing counsel has been provided with an opportunity to question the witness with regard to the prior statement."State v. Foldes (Oct. 25, 1990), Cuyahoga App. No. 57791, unreported, 1990 Ohio App. LEXIS 4630, at *9. While Evid.R. 613(B) permits a witness to be impeached through the introduction of extrinsic evidence under specific circumstances, Evid.R. 613(A) provides that "the statement need not be shown nor its contents disclosed to the witness[.]" Rather, the evidence must merely, on request, be shown or disclosed to opposing counsel. Evid.R. 613.
In the present case, the state made a motion in limine that it intended to utilize portions of Mr. Paletta's taped statement made to the police. It notified the court that, under Evid.R. 801(D)(2)(a), any statements used would not be considered hearsay as it would be a party's own statement made in his individual capacity. Significantly, however, as the trial progressed, the state decided not to introduce the statement into evidence. Rather, the only use made of Mr. Paletta's taped testimony was through the reference to the transcript of such testimony under Evid.R. 612 and 613. Under Evid.R. 612, both Mr. Paletta and the state's witnesses used a written copy of the transcript to refresh memory for the purpose of testifying. Mr. Paletta, being the adverse party, was then properly allowed to cross-examine the state's witnesses and to introduce into evidence those portions which relate to the testimony of the witnesses. Specifically, the court correctly ruled that the purpose of Evid.R. 612 "is only to refresh the witness' memory, not necessarily to present it as admissible evidence into the case."
Under Evid.R. 613, the state referred to Mr. Paletta's prior inconsistent testimony in their cross-examination of him. His statement to police was never introduced into evidence. Rather, the statement was for the purpose of impeachment, and Mr. Paletta, as required by the rule, was given the opportunity to either explain or deny his prior statements. Specifically, the court ruled that, in redirect, defense counsel could "utilize [the] transcript in order to rehabilitate the witness[.]" As a limitation, the court noted that defense counsel could not "rehabilitate on stuff [the state had] not cross-examined him on because it's outside the scope of cross." At the close of the case, the court ruled "that any portions of Mr. Paletta's taped statement to the Sheriff's Department that was entered into either in cross-examination or redirect examination would be appropriate materials to submit to [the] jury in closing arguments[.]" The record indicates that at no time did the state offer or admit either the taped statement or the transcript of Mr. Paletta's statement.
As the state did not offer or admit into evidence any portion of Mr. Paletta's statement, Morehead is inapplicable. Consequently, we conclude that the trial court did not abuse its discretion when it did not admit the entire statement into evidence. Accordingly, Mr. Paletta's first assignment of error is overruled.
 B. Second Assignment of Error THE PROSECUTOR COMMITTED PROSECUTORIAL MISCONDUCT BY HIS ACTIONS IN EXCLUDING THE DEFENDANT'S VOLUNTARY STATEMENT TO THE POLICE, PREVENTING THE DEFENDANT FROM PUTTING ON A REASONABLE DEFENSE, INCLUDING PREVENTING THE DEFENDANT'S EXPERT FROM PERFORMING SCIENTIFIC TESTS, BY FAILING TO MAKE TIMELY DISCLOSURE OF DISCOVERY MATERIALS, ALL OF WHICH DEPRIVED APPELLANT OF HIS RIGHT TO A FAIR TRIAL AND DUE PROCESS OF LAW AS GUARANTEED BY THE CONSTITUTION OF THE STATE OF OHIO AND THE UNITED STATES OF AMERICA.
Mr. Paletta avers that the prosecutor committed prosecutorial misconduct due to frivolous objections, failing to fulfill his discovery obligations, withholding evidence, and preventing the defense from conducting reasonable scientific tests. We disagree.
When reviewing allegations of prosecutorial misconduct, appellate courts must consider that "`the touchstone of due-process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor.'" State v. Hill (1996),75 Ohio St.3d 195, 203, quoting Smith v. Phillips (1982), 455 U.S. 209,219, 71 L.Ed.2d 78, 87. The Ohio Supreme Court has declared that prosecutorial misconduct is not grounds for error unless the defendant has been denied a fair trial. State v. Maurer (1984), 15 Ohio St.3d 239,266. In order to reverse a conviction based on prosecutorial misconduct, the defendant must prove that the comments were improper and that they prejudicially affected the defendant's substantial rights. State v. Smith
(1984), 14 Ohio St.3d 13, 14.
Mr. Paletta has alleged that the state committed prosecutorial misconduct by making frivolous objections. Specifically, he asserts that the prosecutor should not have argued against the taped statement being admitted into evidence. This argument is without merit as we have already determined in the first assignment of error that the trial court did not err in excluding portions of such statement offered into evidence by Mr. Paletta. Thus, the prosecutor's objections were neither frivolous nor improper.
Mr. Paletta has also averred that the prosecutor wrongfully withheld evidence from the defense attorney and did not fulfill his discovery obligations. Mr. Paletta argues that this was a violation of the prosecutor's Brady obligations. See, generally, Brady v. Maryland (1963),373 U.S. 83, 10 L.Ed.2d 215 (holding that suppression of material evidence which is favorable to an accused upon request violates due process). First, Mr. Paletta states that the prosecutor should have told the defense attorney that Ms. McDaniel had admitted to the prosecutor that she had heard a loud hammer-like sound while visiting Mr. Paletta. However, it is questionable whether this evidence was exculpatory, as Ms. McDaniel stated that the sound neither was caused by her ex-husband nor worried her. Similarly, Mr. Paletta admitted that the sound did not frighten him either. Moreover, as Mr. Paletta's attorney came to trial with a hammer and board to recreate the sound, the defense was clearly prepared to bring out the evidence in trial and did get a chance to do so in the manner anticipated. Consequently, the prosecutor's conduct was not improper and Mr. Paletta demonstrated no prejudice.
Second, Mr. Paletta asserts that the prosecutor failed to produce for defense counsel a BB that Ms. McDaniel said was found in her hair. Yet, it appears from the record that the state never collected such an item from Ms. McDaniel. Further, it would seem as if the state was also not informed of the BB until trial, as this information was not given in Ms. McDaniel's original statement.
Mr. Paletta's third assertion is that the prosecutor required the defense attorney to make specific requests for each photograph in evidence in order for the prosecutor to share such evidence with the defense. However, when this issue was raised at trial, the prosecutor stated that he always complied with the discovery requests which were very specific as to which photographs the defense wanted, despite the fact that numerous other pictures were listed in discovery. Commenting on the situation, the court noted that this supposed discovery problem had never been brought to the attention of the court, as required by proper procedure under Crim.R. 16(E)(3), and therefore, the court did not have the opportunity to ascertain whether the defense attorney did in fact request all the pictures the prosecutor had listed in discovery. Thus, the prosecutor's conduct was not improper. Further, Mr. Paletta has not demonstrated that he was prejudiced by this alleged error.
Fourth, Mr. Paletta argues that it was prosecutorial misconduct to add Ms. Zarlinga to the witness list shortly before the trial. This argument has no merit because, once the matter was discussed with the trial court, the state chose not to use Ms. Zarlinga as a witness. As such, Mr. Paletta has failed to show how he was prejudiced by the prosecution's decision to add Ms. Zarlinga to the witness list shortly before trial.
Fifth, Mr. Paletta asserts that, upon his motion, the prosecutor should have produced its file for the court for review and have it sealed for the appellate record. This argument has no merit. On March 2, 2001, the trial court denied Mr. Paletta's motion that the prosecutor's file be copied and sealed. The prosecutor, therefore, was only acting at the direction of the court.
Mr. Paletta also alleges that the prosecutor wrongfully prevented the defense from conducting reasonable scientific tests. Specifically, Mr. Paletta asserts that a forensic scientist should have been able to take the firearm back to his laboratory to perform scientific tests. The state argues that Mr. Paletta never sought the court's or the prosecution's permission to take the gun for testing at a private laboratory; rather, Mr. Paletta's expert asked a deputy if he could remove the gun from the sheriff's office. Again, it appears from the record before this court that this issue had not been raised with the court during the discovery process. The proper recourse for failure to comply with the discovery procedure is to bring the matter to the attention of the court. Accordingly, based upon the record before this court, the court cannot conclude that the prosecutor's conduct was improper and that it prejudiced Mr. Paletta's defense.
Based on the foregoing, we find that the prosecutor's course of conduct did not rise to the level of prosecutorial misconduct. Viewed in the context of the entire trial, it cannot be said that the prosecutor's actions denied Mr. Paletta a fair trial or that his substantial rights were prejudicially affected. Mr. Paletta's second assignment of error is overruled.
 C. Third Assignment of Error THE TRIAL COURT ERRED IN FAILING TO INSTRUCT THE JURY ON THE DEFENSE OF VOLUNTARY INTOXICATION.
 Fourth Assignment of Error THE TRIAL COURT ERRED IN REFUSING TO INSTRUCT THE JURY ON ACCIDENT.
 Fifth Assignment of Error THE TRIAL COURT ERRED IN FAILING TO INSTRUCT THE JURY ON THE AFFIRMATIVE DEFENSE OF SELF-DEFENSE.
Mr. Paletta avers that the trial court erred in failing to instruct the jury on: (1) the defense of voluntary intoxication, (2) the issue of accident, and (3) the affirmative defense of self-defense. We disagree.
 Voluntary Intoxication
Mr. Paletta asserts that the trial court erred in refusing his request that the jury be instructed on voluntary intoxication as a defense to the specific intent element of the crime of improperly discharging a firearm at or into a habitation or school safety zone pursuant to R.C. 2923.161.
While voluntary intoxication is not generally a defense to any crime, evidence of intoxication is admissible for the purpose of showing that the defendant was not capable of forming a specific intent to commit the crime with which he is charged, if such intent is an element of the offense. State v. Wolons (1989), 44 Ohio St.3d 64, 68. "It is within the sound discretion of the trial court to determine whether the evidence presented at trial is sufficient to require a jury instruction on intoxication where the accused claims that his inebriated condition negated the mental state required as an element of the crime charged."Id. at paragraph two of the syllabus.
At trial, evidence was presented that Mr. Paletta drank between three to six beers before driving home in his truck. Mr. McDaniel testified that he thought Mr. Paletta was drunk, and Deputy Lewis indicated in his report that Mr. Paletta was "highly intoxicated[.]" Mr. Paletta also testified that he was drunk at the time of the incident. However, Mr. Paletta admitted that, despite his supposedly drunken state, he had the ability to go to his truck, take out his gun, and load five shells into the gun before shooting it.
Although the testimony at trial establishes that Mr. Paletta was drinking on the day of the incident, the evidence taken as a whole shows that he was acting in a lucid manner and does not indicate that he was not fully aware of the events transpiring around him. The evidence presented falls short of negating his conscious awareness of the circumstances surrounding the shooting of his gun. Accordingly, the trial court did not abuse its discretion in refusing to give a jury instruction on intoxication. Mr. Paletta's third assignment of error is overruled.
 Accident
Mr. Paletta has asserted that there was enough evidence at trial to warrant an instruction to the jury on accident. Specifically, he has challenged the trial court's decision because the forensic expert testified that not only does the evidence support Mr. Paletta's contention that he aimed the gun in the air, but also, that the trigger pull for the weapon used was at the light end of trigger pull.
An accident is an event that occurs unintentionally and without any design or purpose to bring it about. State v. Fears (1999),86 Ohio St.3d 329, 340. "In order for an accident to occur, it must have been a physical event which would not be reasonably anticipated as a result of a lawful act." (Emphasis original.) State v. Denton (Sept. 30, 1993), Franklin App. No. 93AP-603, unreported, 1993 Ohio App. LEXIS 4709, at *3.
In the present case, Mr. Paletta admitted that he was furious that Mr. McDaniel had beaten him up in his own home. Further, Mr. Paletta stated that he got his gun to scare Mr. McDaniel and, once he loaded his gun, he told Mr. McDaniel "[t]wo can play at this game[.]" Mr. Paletta does not dispute that he fired his shotgun. Evidence presented at trial clearly shows that the pellets of the gun struck Mr. McDaniel's home.
As there was no question in this case that Mr. Paletta committed an unlawful act, namely discharging his gun while standing next to his neighbor's home in an effort to scare Mr. McDaniel, an instruction on accident was not appropriate. This court, therefore, concludes that the trial court did not abuse its discretion when it excluded a jury instruction on accident. Mr. Paletta's fourth assignment of error is overruled.
 Self-Defense
Mr. Paletta avers that, since he was in his home and reasonably believed that Mr. McDaniel had a firearm that he was prepared to use, he should have been entitled to a self-defense instruction.
A trial court is not required to instruct the jury on self-defense in every situation in which its presentation is attempted; rather, a trial court need only instruct the jury on self-defense if the defendant "has introduced sufficient evidence, which, if believed, would raise a question in the minds of reasonable [jurors] concerning the existence of such issue." State v. Melchior (1978), 56 Ohio St.2d 15, paragraph one of the syllabus. Thus, if the defendant fails to meet the burden of producing sufficient evidence at trial, a jury instruction on the issue is not warranted. Id.
Pursuant to R.C. 2901.05(C), self-defense is an affirmative defense which must be proven by a preponderance of the evidence. State v. Martin
(1986), 21 Ohio St.3d 91, syllabus, affirmed, Martin v. Ohio (1987),480 U.S. 228, 94 L.Ed.2d 267. One of the essential elements necessary to establish self-defense is honest and reasonable grounds to believe such conduct was necessary to defend himself against the imminent use of unlawful force. See State v. Robbins (1979), 58 Ohio St.2d 74, 79-80, see, also, Columbus v. Dawson (1986), 33 Ohio App.3d 141, 142.
Mr. Paletta's testimony at trial contradicts the claim that he shot the gun in an effort to defend himself. Contrary to Mr. Paletta's assertion on appeal, Mr. Paletta testified at trial that he was not in his home when he fired the weapon; rather, he went out to the truck to load and fire his gun. Further, he stated that he was furious and enraged at Mr. McDaniel and told him "[t]wo can play at this game[.]" As to the fact that he believed Mr. McDaniel had a gun, Mr. Paletta admitted that he originally told officers that, while he did hear either a banging noise or gunshots, he was not scared because people fired guns around the house all the time.
Given Mr. Paletta's admissions and the evidence introduced at trial, Mr. Paletta was not entitled to an instruction of self-defense. Consequently, this court finds that the trial court did not err when it excluded a jury instruction on self-defense. Mr. Paletta's fifth assignment of error is overruled.
 D. Sixth Assignment of Error THE TRIAL COURT ERRED TO THE PREJUDICE OF THE DEFENDANT APPELLANT WHEN IT FOUND THE DEFENDANT-APPELLANT GUILTY AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 Seventh Assignment of Error THE TRIAL COURT ERRED TO THE PREJUDICE OF THE DEFENDANT-APPELLANT, JAMES PALETTA, WHEN IT MADE ITS FINDING OF GUILTY ON THE CHARGE OF IMPROPERLY DISCHARGING A FIRE ARM [sic.]AT OR INTO A HABITATION OF [sic.] SCHOOL WITH A THREE-YEAR GUN SPECIFICATION, AS SUCH FINDING WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
Mr. Paletta asserts that his conviction for improperly discharging a firearm into a habitation with a three-year gun specification was against the manifest weight of the evidence. As the sixth and seventh assignment of errors raise essentially the same argument, they will be considered together. Additionally, in the seventh assignment of error, Mr. Paletta avers that his three-year gun specification was improperly added to his sentence. We disagree.
 Manifest Weight
When a defendant asserts that his conviction is against the manifest weight of the evidence,
 an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.
State v. Otten (1986), 33 Ohio App.3d 339, 340. This discretionary power should be invoked only in extraordinary circumstances when the evidence presented weighs heavily in favor of the defendant. Id.
In order to find Mr. Paletta guilty on the charge of improperly discharging a firearm at or into a habitation or school safety zone, the prosecution was required to prove beyond a reasonable doubt that Mr. Paletta: (1) knowingly and, (2) without privilege, (3) discharged his firearm, (4) at or into the occupied home of the McDaniel's. R.C.2923.161(A).
There is no dispute that Mr. Paletta discharged his firearm without privilege. However Mr. Paletta contends that he did not knowingly fire the weapon at or into an occupied structure. R.C. 2901.22(B) defines the culpable mental state of knowingly and states, in pertinent part, that "[a] person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature."
Mr. Paletta's testimony shows that his conduct met the definition of "knowingly[.]" Though Mr. Paletta had consumed alcohol, he admits to knowingly firing the gun. While he testified that he aimed the gun in the air when he shot it, there was conflicting testimony presented at trial. First, there was evidence that Mr. Paletta's discharge did hit the house, causing holes in the siding and breaking a light. Additionally, Allison McDaniel testified that, while her family was standing near the door of the house, Mr. Paletta aimed the gun at her father. Ms. McDaniel also testified that Mr. Paletta aimed in the direction of Mr. McDaniel. The trier of fact is in a better position to weigh the credibility of the witnesses. State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
After a careful review of the record, we cannot conclude that the jury lost its way and created such a manifest miscarriage of justice when it convicted Mr. Paletta of improperly discharging a firearm at or into a habitation or school safety zone that the conviction must be reversed. Accordingly, we hold that Mr. Paletta's conviction was not against the manifest weight of the evidence.
 Gun Specification
Mr. Paletta was indicted, under R.C. 2923.161(A), for improperly discharging a firearm at or into a habitation or school safety zone. Furthermore, the state added a three-year gun specification to the charge pursuant to R.C. 2941.145. Under this specification, a three-year mandatory prison term is imposed upon an offender whose charge specified that he had a firearm on or about the offender's person or under the offender's control while committing the offense. Additionally, the specification requires that the offender either used the firearm to facilitate the offense or displayed, brandished, or indicated possession of the firearm.
Mr. Paletta contends that the state improperly added the three-year gun specification. Rather, he states that a one-year gun specification should have been added. However, R.C. 2929.14(D)(1)(a)(i) provides that:
 [I]f an offender who is convicted of or pleads guilty to a felony also is convicted of or pleads guilty to * * * a specification of the type described in section 2941.145 * * * the court, after imposing a prison term on the offender for the felony * * *, shall impose an additional prison term[.] * * * If the specification is of the type described in section 2941.145 * * *, the additional prison term shall be three years.
R.C. 2929.14(D)(1)(b) further enumerates specific charges upon which additional prison terms should not be imposed pursuant to R.C.2929.14(D)(1)(a). R.C. 2923.161(A), improperly discharging a firearm at or into a habitation or school safety zone, is not one of those charges.
As the state properly added a three-year gun specification charge, we find that Mr. Paletta's assertion is without merit. Accordingly, we will not overturn the sentencing of the trial court. Mr. Paletta's sixth and seventh assignments of error are overruled.
 III.
Mr. Paletta's assignments of error are overruled. The judgment of the Lorain County Court of Common Pleas is affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellant.
Exceptions.
BAIRD, J., SLABY, J. CONCUR.