[Cite as *State v. Evans*, 2011-Ohio-5267.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 96229**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## JARED EVANS

DEFENDANT-APPELLANT

**JUDGMENT:**
**AFFIRMED**

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-537647

BEFORE:   Jones, P.J., Cooney, J., and E. Gallagher, J.

RELEASED AND JOURNALIZED:   October 13, 2011
**ATTORNEY FOR APPELLANT**

Steve W. Canfil
1370 Ontario Street
Standard Building, Suite 2000
Cleveland, Ohio 44113


**ATTORNEYS FOR APPELLEE**

William D. Mason
Cuyahoga County Prosecutor

BY: Melissa Riley
Assistant County Prosecutor
The Justice Center, 8th Floor
1200 Ontario Street
Cleveland, Ohio 44113


LARRY A. JONES, J.:

{¶ 1} Defendant-appellant, Jared Evans, appeals his assault conviction. Finding no merit to the appeal, we affirm.

{¶ 2} In 2010, Evans was charged with assault on a police officer, a felony of the fourth degree. He waived his right to a jury trial, and his case was tried to the bench. The apposite facts were presented at trial.

{¶ 3} On May 16, 2010, Lee Lucas ("Lucas"), a federal drug enforcement agency agent on administrative leave, was working as the night manager at Panini's in Westpark. Lucas testified that just after closing time, he noticed two men in the middle of Rocky River Drive circling each other, as though they were preparing to fight. One of the men,

later identified as Evans, tackled the other young man, whose hair was cut into a mohawk.

{¶ 4} Lucas saw Robert Foley ("Foley"), a Cleveland police lieutenant working security at Panini's, approach the fray. He further observed a passing pickup truck swerve to miss the two men fighting in the middle of the busy street.

{¶ 5} Lucas testified he heard Foley yell, "Cleveland police, break it up." Lucas saw Foley hold up his police badge and identify himself as a police officer. Foley was not in uniform, but had his badge on a chain around his neck and his service weapon holstered on his belt.

{¶ 6} Lucas explained that he grabbed Evans and told him to "take it easy," because "the cops," were there. Lucas testified that Evans appeared to calm down so he released him from his grasp. "At this point," Lucas testified, "as Lieutenant Foley was pushing people backwards, the defendant ran from my left side, crossed me, and ran over and I saw him punch Lieutenant Foley in the back of the ear." Lucas explained that he and Evans were 10-20 feet away from Foley when Evans got up and charged Foley. Foley fell to the ground and temporarily lost consciousness. Lucas testified that he ran over, "foot swept" Evans, and held him on the ground.

{¶ 7} Foley testified that he was working off-duty security at Panini's and was dressed in plain clothes, with his badge around his neck and his service weapon and handcuffs on his belt. He explained that that area of Westpark was his usual beat and everyone knew him.

**{¶ 8}** Foley first saw Evans fighting in the middle of the street with another male. Foley explained that as a police officer working security at Panini's, he had a duty to react to the dangerous situation because "it appeared that somebody was going to get injured in th[e] altercation" and the men were fighting in the middle of a busy thoroughfare. He testified that he loudly and repeatedly identified himself as a police officer at least 20 times.

**{¶ 9}** Foley approached the two men and grabbed the man with the mohawk as Lucas grabbed Evans. Foley testified that he had his back to Evans and was telling the man with the mohawk that he was under arrest when a couple of other men in the crowd pulled Foley away. Foley testified he pushed two of the men back, again identifying himself as a police officer. At this time, he was hit in the back of the head and blacked out. When he woke up, he helped Lucas secure Evans in handcuffs. Foley suffered a broken finger and abrasions as a result of the incident.

**{¶ 10}** Detective Scott Clayton was the investigating detective. He interviewed Evans, who told him that he was involved in a fight over a girl. Detective Clayton told Evans to have his witnesses contact him so that they could be interviewed, but Evans never gave him any further information about his witnesses. James Castor, Evans's friend, testified for the defense. He testified that he met up with Evans around 1 a.m. They were separated at a bar, and when Castor went to find Evans, he saw Evans engaged in a verbal altercation with a group of people, including a man with a mohawk. Castor

testified that he and Evans began to walk down an alley towards Castor's car when the man with the mohawk said he wanted to fight Evans. Evans chose to confront the man, and the two began to circle each other. Castor testified that he saw two older men run up to the fight. He witnessed their friend, Eric Pliske, pull Foley off of Evans. He then saw Evans get up off the ground and hit Foley in the back, knocking him down. Castor maintained that neither Lucas nor Foley said anything to identify themselves as police officers. He further maintained that Evans was standing within a foot or two of Foley when he got up and hit him. Further, he saw that Foley hit Evans after he had been subdued.

{¶ 11} Eric Pliske testified that he was also out that evening with Evans. As they were walking in the alley towards Castor's car, a man with a mohawk and two other men began following them and making fun of them. Pliske testified that the man with the mohawk pushed Evans and so Evans started to fight him. He testified that he was not concerned about the fight and turned his back on it. When he turned around, he saw two older men on top of Evans. Evans yelled to him for help, and Pliske pulled one of the older men off of Evans. Pliske admitted he saw Evans hit one of the older men in the back of the head, but maintained that the man never identified himself as a police officer.

{¶ 12} Evans testified that he had consumed three beers that evening and was walking down the alley when a man with a mohawk started following his group of friends, yelling obscenities at him. According to Evans, the man thought Evans was a

friend of a young man named "Sam." Evans testified that Sam and the man with the mohawk had gotten into a fight earlier that evening and Sam sustained serious injuries as a result of that incident.

{¶ 13} Evans testified that the man with the mohawk took a swing at him and missed, so Evans tackled him. He testified that two other men jumped on him and started to wrestle him. He explained that he thought the two men who jumped on him were with the guy with the mohawk and he was afraid he would meet the same fate as Sam.

{¶ 14} After his friend Pliske pulled one of the men off, Evans testified he stood up, and "just took a swing and hit him hoping that I could just get him off me and run." He further testified that Foley was only "a foot, two foot" away from him when he hit him. He further contended that he did not mean to harm Foley; instead, he "just wanted to get out of that situation with those three guys on top of me." He also testified that Foley kicked him in the side of the face and split his nose and "then maybe punched me two times."

{¶ 15} On cross-examination, Evans admitted that after Pliske pulled Foley off him, he "got an extra wind when I saw an opening spot" and was able to get off the ground. He admitted to having the purpose of making physical contact with Foley, but contended that he did not know that Foley was a police officer.

{¶ 16} During his testimony, Detective Clayton explained that while Evans told

him about the man with the mohawk, Evans never told the detective about "Sam" or his claim that the man with the mohawk was pursuing Evans as a result of the earlier fight.

{¶ 17} The trial court convicted Evans of assault, finding that the testimony of Lucas and Foley was credible and Evans "who was unrestrained, close-punched someone who had neither threatened or struck him."   The trial court further found that Foley was in the performance of his official duties at the time he was assaulted and Evans was not able to show, by a preponderance of the evidence, the elements of self-defense.

{¶ 18} The trial court sentenced Evans to one-year of community control sanctions and ordered him to maintain employment and get his GED.

{¶ 19} Evans appealed, raising the following two assignments of error, which will be combined for review:

{¶ 20} "I.   Appellant's conviction was not in accord with the manifest weight of the evidence.

{¶ 21} "II.   Appellant was denied a fair trial in violation of his constitutional rights to due process when the trial court failed to properly apply the law of self-defense which recognizes that a defendant may establish that he was justified in using force when he was not at fault in creating the situation, and that he had reasonable grounds to believe and an honest belief, even if mistaken, that he was in imminent danger of bodily harm."

{¶ 22} On appeal, Evans argues that the trial court erred in denying his claim that he acted in self-defense, and that his conviction for assault was against the manifest weight of the evidence presented at trial.

{¶ 23} Under Ohio law, self-defense is an affirmative defense for which the defendant bears the burden of proof. *State v. Foster-Jones*, Montgomery App. No. 23681, 2010-Ohio-5758, ¶29. In order for Evans to establish self-defense involving the use of nondeadly force, he was required to show, by a preponderance of the evidence: "(1) that he was not at fault in creating the situation giving rise to the altercation and (2) that he had reasonable grounds to believe and honest belief, even though mistaken, that he was in imminent danger of bodily harm and his only means to protect himself from such danger was by the use of force not likely to cause death or great bodily harm." *State v. Hunt*, Cuyahoga App. No. 94534, 2011-Ohio-92, ¶20, citing *State v. Fritz*, Montgomery App. No. 20796, 2005-Ohio-4736. If a defendant fails to prove any one of these elements by a preponderance of the evidence, then he has failed to show that he acted in self-defense. See *State v. Jackson* (1986), 22 Ohio St.3d 281, 284, 490 N.E.2d 893.

{¶ 24} When reviewing a claim by a defendant that evidence supports his claim of self-defense, the manifest weight standard is the proper standard of review since the defendant who claims self-defense is not seeking to negate an element of the offense charged; rather, he seeks to relieve himself from culpability. *State v. Carman*, Cuyahoga App. No. 90512, 2008-Ohio-4368, ¶18, citing *State v. Martin* (1986), 21 Ohio St.3d 91, 488 N.E.2d 166, affirmed by *Martin v. Ohio* (1987), 480 U.S. 228, 107 S.Ct. 1098, 94 L.Ed.2d 267; see, also, *In re D.P.*, Cuyahoga App. No. 82151, 2003-Ohio-5821.

{¶ 25} In evaluating a challenge to the verdict based on the manifest weight of the

evidence, a court sits as the thirteenth juror and intrudes its judgment into proceedings that it finds to be fatally flawed through misrepresentation or misapplication of the evidence by the trier of fact that has "lost its way." *State v. Thompkins*, 78 Ohio St.3d 380, 390, 1997-Ohio-52, 678 N.E.2d 541. In *Thompkins*, the Ohio Supreme Court stated:

> "'Weight of the evidence concerns the 'inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief.' * * *

> "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." (Emphasis omitted.) Id.

{¶ 26} In *State v. Bruno*, Cuyahoga App. No. 84883, 2005-Ohio-1862, this court stated that an appellate court must be mindful that the weight of the evidence and the credibility of witnesses are matters primarily for the trier of fact. A reviewing court may not reverse a verdict where the trier of fact could reasonably conclude from substantial evidence that the prosecution proved the offense beyond a reasonable doubt. *State v. DeHass* (1967), 10 Ohio St.2d 230, 227 N.E.2d 212, paragraph one of the syllabus; *State v. Eley* (1978), 56 Ohio St.2d 169, 383 N.E.2d 132. Moreover, in reviewing a claim that a conviction is against the manifest weight of the evidence, a conviction cannot be reversed unless it is obvious that the trier of fact clearly lost its way and created such a

manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Garrow* (1995), 103 Ohio App.3d 368, 370-371, 659 N.E.2d 814.

{¶ 27} Evans argues that he did not create the situation that gave rise to his use of force to protect himself. He claims that he thought Lucas and Foley were associated with the man who was taunting him and that he was unaware that Foley was a police officer. Thus, he argues, he was legitimately mistaken in his belief that he had to protect himself from Foley and was in imminent danger of bodily harm when he struck him; therefore, he was acting in self-defense.

{¶ 28} But Foley and Lucas both testified that Foley repeatedly and loudly identified himself as a Cleveland police officer as he was approaching the fray. Moreover, a finding by the trier of fact that the victim was a peace officer simply enhances the degree of the offense and potential penalty; proof of knowledge of the victim's status is not required. *State v. Wilcox*, 160 Ohio App.3d 468, 2005-Ohio-1745, 827 N.E.2d 832, at ¶3, quoting *State v. Gimenez* (Sept. 4, 1997), Cuyahoga App. No. 71190. Thus, Evans's claim that he did not know that Foley was a police officer does not relieve him of culpability.

{¶ 29} Foley and Lucas testified that Foley grabbed the man with the mohawk and was turned away from Evans, who was on the ground. Evans admitted that he sat on the ground, took a moment to "get his wind," and then got off the ground and punched Foley in the back of the head.

{¶ 30} Based on these facts, the trial court did not err in finding that the defense of self-defense did not apply to absolve Evans of liability.

{¶ 31} We also do not find that the conviction for assault was against the manifest weight of the evidence. R.C. 2903.13(A), which governs the offense of assault, provides that "[n]o person shall knowingly cause or attempt to cause physical harm to another." R.C. 2903.13(C)(3) provides, "[i]f the victim of the offense is a peace officer * * * while in the performance of their official duties, assault is a felony of the fourth degree."[1]

{¶ 32} We find that the trial court could reasonably conclude from substantial evidence that the state proved the offense of assault beyond a reasonable doubt. The trial court, as the trier of fact in this case, was in the best position to judge the credibility of the witnesses and their testimony. Whether Lucas's and Foley's testimony was more credible than that of Evans and his friends is a matter best reserved to the trier of fact, not to a court reviewing a cold record. We do not find that the trial court's decision created such a manifest miscarriage of justice as to require reversal of the conviction.

{¶ 33} The first and second assignments of error are overruled.

{¶ 34} Accordingly, judgment is affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

---

[1] On appeal, Evans does not challenge the trial court's finding that Foley was in furtherance of his official duties when he broke up the fight and was hit by Evans.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

LARRY A. JONES, PRESIDING JUDGE

COLLEEN CONWAY COONEY, J., and
EILEEN A. GALLAGHER, J., CONCUR