[Cite as *State v. Lilly*, 2018-Ohio-949.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | Hon. John W. Wise, P.J. |
| Plaintiff - Appellee | : | Hon. Craig R. Baldwin, J. |
| | : | Hon. Earle E. Wise, J. |
| -vs- | : | |
| | : | |
| SIDNEY D. LILLY | : | Case No. 2017CA00105 |
| | : | |
| Defendant - Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:   Appeal from the Stark County Court
of Common Pleas, Case No. 2016-
CR-2132-B


JUDGMENT:         Affirmed


DATE OF JUDGMENT:     March 12, 2018


APPEARANCES:

For Plaintiff-Appellee       For Defendant-Appellant

JOHN D. FERRERO       BERNARD L. HUNT
Prosecuting Attorney       2395 McGinty Rd. N.W.
             North Canton, Ohio 44720
By: RONALD MARK CALDWELL
Assistant Prosecuting Attorney
Appellate Section
110 Central Plaza South, Suite 510
Canton, Ohio 44702-1413

*Baldwin, J.*

{¶1} Appellant, Sidney Doyle Lilly, III appeals his conviction of one count of aggravated robbery (R.C. 2911.01(A)(1)) with a firearm specification (R.C. 2941.145), one count of having weapons while under disability (R.C. 2923.13(A)(3)), one count of receiving stolen property (R.C. 2913.51(A)), and one count of discharge of a firearm on or near prohibited premises (R.C. 2923.162(A)(2)) for an aggregate prison term of 16 years.   Appellee is the state of Ohio.

### STATEMENT OF FACTS AND THE CASE

{¶2} On November 4, 2016, at approximately 9:00 PM, two masked men dressed in black came into the Thornes IGA store located at 653 South Union Street in Alliance. One was armed with a sawed-off shotgun, while the other had a chrome snub-nosed revolver. The man armed with the sawed-off shotgun ordered two store employees and two customers to drop to the ground. While the man armed with the shotgun kept watch, the other masked man jumped over the counter and took $44.00 from the cash register, then both left the store. The Alliance Police Department responded to the scene and gathered names and statements from the employees and customers.

{¶3} At approximately 11:30 p.m. on the day of the robbery, the Alliance Police Department received a report of a suicidal man with a gun at 1208 Freedom Avenue, a short distance from Thornes IGA.   Several officers responded to the scene where they found appellant, apparently intoxicated, on the front porch of the residence.   Appellant was secured, but did not possess a weapon.   The officers did locate a silver revolver, on the ground, about five feet from where the appellant was standing.   After speaking with the witnesses, the officers determined that appellant had been brandishing the weapon

earlier that evening frightening the persons in the home. Some of the witnesses persuaded appellant to give them the gun, but he became more agitated so they agreed to return it if he agreed to leave the residence. The witnesses reported that he left the home and fired the weapon into the air.

{¶4} The Alliance police department discovered the weapon was loaded and one chamber contained a spent shell. They also confirmed the weapon was operable, that it had been reported as stolen, and that appellant had prior convictions for drug offenses that rendered him under a disability regarding possession of weapons. Appellant was arrested at that time.

{¶5} Appellant was tested for gunshot residue and the results confirmed he had fired a weapon recently. Captain Hilles of the Alliance police department spoke to appellant about the discharge of the gun and appellant initially denied that he had possession of it. He then admitted that he had been given the gun earlier that day and that his girlfriend had knocked it from his hand when the police arrived to avoid any conflict with the officers.

{¶6} Captain Hilles had prior contact with appellant and, based upon that history, he thought that appellant might have some information regarding the robbery at Thornes IGA. Appellant initially denied knowledge of the robbery, but when Captain Hilles suggested that any assistance he provided might be considered in calculating bond for the weapons charge, appellant said that Rkel Black committed the robbery. Appellant explained that he was at his mother's residence on Summit Street when Rkel Black appeared with a sawed-off shotgun that was used in the robbery. Appellant denied knowing the identity of Black's accomplice, but stated that Black would tell Captain Hilles.

{¶7} A confidential informant, later identified as Brianna Benjamin, contacted Captain Hilles on November 6, 2016 and reported that appellant was involved in the Thornes IGA robbery with Rkel Black. After receiving that information, Captain Hilles obtained search warrants for the residences of Rkel Black and appellant. During the search at Rkel Black's residence the officers found black clothing and a black bandana matching the description of the clothing of the perpetrators, $33.00 in cash, and a sawed-off shotgun. The officers also found matching black clothing at appellant's residence.

{¶8} The Alliance Police Department took appellant's and Black's cell phones during the search and obtained a search warrant to review the messages and data on the phones. They discovered that both men called and texted each other numerous times from 2:30 p.m. until 8:33 p.m. on the day of the robbery. The communication between the two ceased from 8:33 p.m. until 9:44 p.m. and no calls or messages were made from appellant's phone during that period. After 9:44 p.m. until midnight, the calls and texts resumed the pace that existed prior to 8:33 p.m.

{¶9} On the day of the Thornes IGA robbery, Brianna Benjamin was talking, messaging, and texting with appellant throughout the day. At one point, appellant told Benjamin that he was going "to hit a lick" later that day, meaning that he was going to rob a store or a house. Between 9:30 p.m. and 10:00 p.m. that night, appellant met Ms. Benjamin at the apartment of a friend, X'Arrianna "Pumpkin" Fisher. When Benjamin arrived, she entered the apartment with appellant and Black. Black was acting "paranoid, and Benjamin asked him "what was wrong." Black responded by pulling a shotgun from inside his pants leg. Appellant then pulled a small gun from the pocket of his hoodie. The men then explained to Benjamin that they had "hit a lick" that night, but only got $40.00.

{¶10} Appellant's mother, Pecorial Lilly, and her friend, Patricia Freeman, claim that appellant was at his mother's home on the night of the robbery beginning late in the afternoon and until 11:00 p.m. that night.

{¶11} The grand jury indicted appellant on 5 counts: aggravated robbery (R.C. 2911.01(A)(1)) (with a firearm specification (R.C. 2941.145)), having weapons while under disability (R.C. 2923.13(A)(3)), receiving stolen property (R.C. 2913.51(A)), aggravated menacing (R.C. 2903.21(A)), and discharge of a firearm on or near prohibited premises. (R.C. 2923.162(A)(2)). The case was presented to a jury on May 9, and May 10, 2017.

{¶12} The state dismissed the aggravated menacing charge and the jury convicted appellant on the remaining counts. Appellant was sentenced to an aggregate prison term of sixteen years. Appellant filed his notice of appeal on June 22, 2017 and submitted two assignments of error:

{¶13} I. THE DEFENDANT WAS DENIED HIS RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL.

{¶14} II. THE TRIAL COURT'S FINDING OF GUILT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE PRESENTED, THUS WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE OF GUILT.

## STANDARD OF REVIEW

## INEFFECTIVE ASSISTANCE OF COUNSEL

{¶15} To succeed on a claim of ineffectiveness, a defendant must satisfy a two-prong test. Initially, a defendant must show that trial counsel acted incompetently. See, *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In

assessing such claims, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Id. at 689, citing *Michel v. Louisiana,* 350 U.S. 91, 101, 76 S.Ct. 158, 100 L.Ed.2d 83 (1955). "There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." *Strickland,* 466 U.S. at 689. The question is whether counsel acted "outside the wide range of professionally competent assistance." Id. at 690. Even if a defendant shows that counsel was incompetent, the defendant must then satisfy the second prong of the Strickland test. Under this "actual prejudice" prong, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694.

{¶16} Appellant contends that trial counsel was ineffective for failing to move to suppress statements he made to the Alliance Police because appellant was intoxicated and possibly suicidal. Appellant offers no authority to support his contention that the statements would have been suppressed as a result of his intoxication or emotional state at the time he spoke with Alliance police, and the record does not contain any evidence that would suggest police misconduct.

{¶17} Further, Appellant does not describe how the outcome of the case would have been altered had the trial court prohibited the admission of his statements. During his conversation with Captain Hilles he denied any participation in the robbery and implicated Rkel Black and another person he claimed not to know. He stated he was at

his mother's when the robbery occurred and made no admissions that could be described as prejudicial. Appellant does not explain how the exclusion of these statements would have impacted the outcome of the trial and, after review of the record, we cannot agree that the failure to seek suppression of the statement was prejudicial. "**** [W]hen a record reveals no evidence of police threats or promises and the statement itself appears voluntary and consistent with the evidence, "... [trial counsel] could well ... decide[ ] that the motion was futile." *Flors*, 38 Ohio App.3d at 139, 528 N.E.2d at 956, as cited in *State v. Steel*, 3rd Dist. Defiance No. 4-96-29, 1997 WL 661108, *2, State v. Wharf, 86 Ohio St.3d 375, 1999-Ohio-112, 715 N.E.2d 172 (1999). The record in this case discloses no evidence of police threat or promise and his statements were not incriminating. We cannot conclude from the evidence that counsel acted incompetently. "We will not second-guess the strategic decisions counsel made at trial even though appellate counsel now argue that they would have defended differently." *State v. Post* (1987), 32 Ohio St.3d 380, 388, 513 N.E.2d 754, 762 as cited in *State v. Mason*, 82 Ohio St.3d 144, 169, 1998-Ohio-370, 694 N.E.2d 932 (1998).

**{¶18}** Appellant is also critical of trial counsel's failure to present the testimony of X'Arrianna "Pumpkin" Fisher, but he does not provide us insight into the content of that testimony except to state that she "could have bolstered the Defendant's case and refuted the time line and testimony established by Breanna Benjamin." (Appellant's Brief, p. 4) The record does reflect that "Pumpkin" did appear at the trial and spoke to defense counsel regarding her testimony. Appellant's trial counsel reported to the trial court that he expected this witness "to say Brianna was never at her house that night" but, "after a second consultation with her and Mr. Vance, I have decided that we really do not need to

call Pumpkin." (Transcript, Vol. No. II, page 291, lines 24-25; page 297, lines 7 through 9). Trial counsel made an informed decision regarding the testimony of Ms. Fisher and, as we stated above, we will not second-guess the strategic decisions made by trial counsel even though appellate counsel states he would have taken a different approach.

{¶19} We hold that appellant has failed to demonstrate that trial counsel was incompetent and has further failed to demonstrate any reasonable probability the outcome of the trial would have differed had trial counsel taken filed a motion to suppress his statements.

{¶20} For the foregoing reasons, appellant's first assignment of error is overruled.

## MANIFEST WEIGHT / SUFFICIENCY

{¶21} The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different. *State v. Thompkins*, 78 Ohio St.3d 380, 1997–Ohio–52, 678 N.E.2d 541, paragraph two of the syllabus. The standard of review for a challenge to the sufficiency of the evidence is set forth in *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991) at paragraph two of the syllabus, in which the Ohio Supreme Court held as follows: "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."

**{¶22}** In determining whether a conviction is against the manifest weight of the evidence, the court of appeals functions as the "thirteenth juror," and after "reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be overturned and a new trial ordered." *State v. Thompkins*, supra, 78 Ohio St.3d at 387. Reversing a conviction as being against the manifest weight of the evidence and ordering a new trial should be reserved for only the "exceptional case in which the evidence weighs heavily against the conviction." Id.

**{¶23}** We note the weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. *State v. DeHass,* 10 Ohio St.2d 230, 237 N.E.2d 212 (1967). The trier of fact "has the best opportunity to view the demeanor, attitude, and credibility of each witness, something that does not translate well on the written page." *Davis v. Flickinger*, 77 Ohio St.3d 415, 418, 1997–Ohio–260, 674 N.E.2d 1159.

**{¶24}** We note that appellant does not present an argument that his conviction for discharge of a firearm (R.C. 2923.162(A)(2)) having a firearm while under a disability (R.C. 2913.23(A)(3)) or receiving stolen property (R.C. 2913.51(A)) was against the manifest weight of the evidence, but appears to address only the aggravated robbery with the firearm specification charge. We have closely reviewed the record and found sufficient evidence to support the conviction for those charges and we find that those convictions are neither against the manifest weight of the evidence nor were they supported by insufficient evidence. To the extent that the appellant's assignment of error is interpreted as addressing those charges, we overrule the second assignment of error.

{¶25} We also overrule the second assignment of error with regard to the remaining charge, aggravated robbery with a weapons specification. Upon careful review of the record before us, we find sufficient, credible evidence on each material element of aggravated robbery with a weapons specification and this evidence, if believed, would convince the average mind of appellant's guilt beyond a reasonable doubt.

{¶26} The state was obligated to prove the following elements to convict the appellant:

(A)     No person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall do any of the following:

(1)     Have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it;

R.C. 2911.01(A)(1)]

{¶27} Appellant argues the evidence presented to the jury was insufficient to establish that he was responsible for the crime, though he does not deny that the crimes were committed.  Therefore, our review of the record focuses upon evidence regarding the identity of the perpetrator. We find that the testimony and exhibits received by the jury provided sufficient evidence for the jury to conclude that appellant was the person who committed the offenses described. The record contains evidence that established that appellant resided close to the crime scene, that he possessed clothing that matched the clothing worn by the perpetrators and that he possessed a weapon that matched the description of one of the weapons used during the robbery.  Brianna Benjamin, an

associate of appellant, testified that he told her before the robbery that he intended to "hit a lick" or commit a robbery. She talked with him after the crime had occurred and he admitted that he had committed a robbery but only recovered $40.00, an amount suspiciously close to the actual amount taken from the store.

**{¶28}** Appellant contends that the witnesses against him lacked credibility and that the weight of the evidence is insufficient to support his conviction. We are mindful of the rule that an appellate court does not substitute its judgment on disputed facts for that of the trier of fact. *State v. Lundy* (1987), 41 Ohio App.3d 163, 171. The weight given to the evidence and the determination of the credibility of the witnesses are within the province of the jury. *State v. Martin* (1986), 21 Ohio St.3d 91, 95, *aff'd sub nom Martin v. Ohio* (1987), 480 U.S. 228; *State v. DeHass* (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. Determinations regarding weight and credibility are within the prerogative of the jury and we will not substitute our judgment. Having reviewed the testimony contained in the record, we cannot say that the jury, in resolving conflicts in the evidence, lost its way and created such a manifest miscarriage of justice to warrant reversal of appellant's conviction.

**{¶29}** Appellant's second assignment of error is overruled.

**{¶30}** The decision of the Stark County Court of Common Pleas is hereby affirmed. Costs assessed to appellant.

By: Baldwin, J.

John Wise, P.J. and

Earle Wise, J. concur.